■ MICHAEL C. SINGER, Respondent, v JEFFERIES & COMPANY, INC., et al., Appellants.—Order, Supreme Court, New York County (Myriam J. Altman, J.), entered on or about July 15, 1988, which denied defendants' motion for summary judgment to dismiss the complaint, unanimously affirmed, without costs.

Defendants appeal from an order denying their motion for summary judgment in this tort action whose underlying facts defy categorization. The grounds for the motion were lack of proximate cause, the running of the allegedly applicable Statute of Limitations, and failure to state a cause of action.

In essence, defendants contend that plaintiff's claim is solely for injury to reputation; is governed, and barred, by the one-year Statute of Limitations (CPLR 215 [3]); and, in any event, fails to state a cause of action because, *inter alia,* any harm suffered by plaintiff was unforeseeable. A discussion of the facts giving rise to the instant action is therefore an indispensable prerequisite for determining the merit of defendants' assertions.

Plaintiff, Michael C. Singer, was employed as a senior vice-president in the corporate finance department of the corporate defendant, Jefferies & Co., from 1983 until early September 1986. The individual defendant, Boyd Jefferies, was the chief executive officer of the corporate defendant.

In March 1985, individual defendant Jefferies telephoned plaintiff and instructed him to dictate an invoice, in the amount of $3,000,000, for services rendered to Ivan F. Boesky Corporation. This plaintiff dutifully did, signing his name on the subject invoice.

In September 1986, plaintiff left defendants' employ, joining Salomon Brothers as a vice-president. On November 14, 1986, a Federal subpoena of plaintiff, related to the Ivan Boesky insider trading investigation, was issued by the SEC. This was delivered to Salomon Brothers, which accepted service of the subpoena in plaintiff's absence. Counsel for Salomon Brothers' legal staff apparently reviewed the subpoena, which specifically asked about the subject invoice and the reason behind any payments made to Boesky by Jefferies.

Action by Salomon Brothers was swift. In a matter of days, on November 18, 1986, plaintiff's resignation was requested, allegedly with the assurance that he would be rehired were it determined that he had committed no wrong. The international press, including the New York Times, Wall Street Journal and Financial Times, featured articles on November 19 through 21, detailing the relationship between Jefferies and Boesky, the subpoenas served upon Singer and Jefferies, and the circumstances surrounding Singer's abrupt departure from Salomon Brothers.

Plaintiff, who was never personally accused of any improprieties, fully cooperated with the Government in its investigations. Indeed, in 1987, he received a commendation from the then United States Attorney for the Southern District of New York, Rudolph Guiliani, for his cooperation. In sharp contrast, defendant Boyd Jefferies resigned his position and, on or about March 19, 1987, entered a plea of guilty to two felony counts under Federal securities law; these concerned aiding and abetting one of Boesky's entities in making false entries on its books. In a subsequent press release, Jefferies accepted sole responsibility for the false invoice he had instructed plaintiff to prepare and deliver to Boesky.

Although vindicated, plaintiff sustained a prolonged period of unemployment in 1987. Salomon Brothers declined to rehire him. Plaintiff thereafter had a less than enthusiastic response to his job search, and ultimately accepted a position at which his earnings were a fraction of those at Salomon Brothers.

On November 13, 1987, a year less a day after he was served with the SEC subpoena at Salomon Brothers, plaintiff commenced the within action, alleging that he had been injured in his trade and profession *and* had suffered injury to his reputation. Plaintiff seeks both compensatory and punitive damages from defendants. Defendants responded with the motion to dismiss which is the subject of the instant appeal.

The IAS court denied the motion. It held that the complaint stated a cause of action for an intentional wrong, although defendants' acts did not obviously correspond to any formal category of tort. Regardless, the court ruled that the claim was governed by the one-year Statute of Limitations which governs causes of action sounding in defamation. (CPLR 215 [3].) The court found that upon the facts herein, "[p]laintiff's claim accrued when his involvement was publicly revealed, and that happened no earlier than November 14, 1986 when

the subpoena was delivered to Salomon Brothers". The court noted that "[t]he mere preparation and delivery of the invoice does not constitute publication because it involves private action between the parties to the transaction." Finally, it concluded that whether defendants' conduct was the proximate cause of plaintiff's alleged injury was a question of fact.

We are also of the view that defendants' contentions are lacking in merit. However, the rationale which we employ in arriving at this conclusion diverges, in part, from that of the IAS court.

We find the facts herein state a cause of action sounding in tort. That we are unable to precisely categorize this tort is of no import, since "[i]t is axiomatic that the simple fact that [a plaintiff's] action does not fit into a nicely defined or established 'cubby-hole' of the law does not in itself warrant the denial of relief to him." *(Seidel v Greenberg,* 108 NJ Super 248, 256-257, 260 A2d 863, 868 [1969].) Indeed, as Dean Prosser has written: "There is no necessity whatever that a tort have a name. New and nameless torts are being recognized constantly, and the progress of the common law is marked by many cases of first impression, in which the court has struck out boldly to create a new cause of action, where one has never been recognized before." (Prosser and Keeton, Torts, at 3 [5th ed].)

Defendants' contention on appeal that plaintiff's claim should be narrowly construed as one for defamation is unavailing. They make much of the fact that "unlike most torts, defamation is defined in terms of the injury, damage to reputation, and not in terms of the manner in which the injury is accomplished" *(Morrison v National Broadcasting Co.,* 19 NY2d 453, 458 [1967]). However, unlike the plaintiff in *Morrison,* the plaintiff herein is not seeking recovery for damages solely because of injury to his reputation, nor does he assert that *defendants* released information which communicated to the public that he was involved in criminal activity. *(See, Horstein v General Motors Corp.,* 391 F Supp 1274, 1278 [SD NY 1975].)* Undoubtedly, while defendants and Boesky intended their criminal acts, we cannot, under any circumstances, imagine that it was ever their intent that their criminal acts should become known; logic dictates the opposite to be true.

Our view is, instead, that the claims asserted by plaintiff may be analogized to a variety of torts including, but not

limited to, fraud and misrepresentation,* malicious prosecution and breach of contract. We do not, however, disregard the possibility of a defamation-type claim, in view of the unquestioned injury to plaintiff's reputation. *(Morrison v National Broadcasting Co.,* 24 AD2d 284 [1st Dept 1965], *revd on other grounds* 19 NY2d 453, *supra; Seidel v Greenberg,* 108 NJ Super 248, 260 A2d 863, 868, *supra.)* As a matter of policy, justice and fairness, plaintiff should not be precluded from having his day in court simply because the hornbook index does not list the tortious acts herein involved. *(See, Gale v Ryan,* 263 App Div 76, 78 [1st Dept 1941] [plaintiff wrongfully subjected to investigation because of improper actions of defendants]; *Seidel v Greenberg, supra* [judgment for plaintiff where principal stockholders engaged in arson conspiracy, following which innocent plaintiff was subjected to investigation and prosecution]; *compare, Al Raschid v News Syndicate Co.,* 265 NY 1, 4-5 [1934].)

Under the circumstances herein, we disagree with the ruling of the IAS court that the one-year period governed and hold that the six-year time period in which actions for fraud must be raised is applicable in the case herein. *(See,* CPLR 213 [8].) The IAS court correctly noted that plaintiff could not reasonably have discovered the quasi-fraudulent acts herein until November 14, 1986, and that is the date upon which we deem the cause of action to have arisen. Thus, plaintiff's action is timely.

Finally, whether the harm suffered by plaintiff was foreseeable is a question of fact for the jury. However, the element of reasonable foreseeability does not mean that the exact occurrence or precise injury need be foreseen. *(Horstein v General Motors Corp.,* 391 F Supp, *supra,* at 1277; *Seidel v Greenberg,* 108 NJ Super 248, 260 A2d 863, 871, 873, *supra.)* It is sufficient that defendants should have been able to foresee that some injury might have resulted from their acts. *(Hoggard v Otis Elevator Co.,* 52 Misc 2d 704, 708-710 [Sup Ct, NY County 1966], *affd* 28 AD2d 1207 [1st Dept 1967].)

Accordingly, the order appealed from is affirmed. Concur—Sullivan, J. P., Carro, Milonas, Wallach and Smith, JJ.

---

* We note that the action herein appears to meet the elements of fraud. (Prosser and Keeton, Torts, at 728 [5th ed].)