David J. O'BRIEN, Plaintiff,

v.

Norman E. ALEXANDER, Stuart Z. Krinsly, Gerald S. Gutterman, John J. Quicke, Ellen T. Harmon, Schulte Roth & Zabel, David Brodsky, Chaye Zuckerman Shapot, Sequa Corporation, Sequa Capital Corporation, and John Does 1–5, Defendants.

No. 94 Civ. 5400 (DC).

United States District Court,
S.D. New York.

Aug. 29, 1995.

Charles B. Manuel, Jr., New York City, for plaintiff.

Schulte Roth & Zabel by Jonathan Taylor, Brooks R. Burdette, New York City, for defendants.

164

## OPINION

CHIN, District Judge.

Plaintiff David J. O'Brien alleges in this action that defendants damaged his reputation and career by committing various torts—malicious prosecution, abuse of process, defamation, negligence, prima facie tort, general tort and tortious interference with contract—as well as by violating the New York Judiciary Law. He has named as defendants not only his former employer, but also certain corporate officers as well as the attorneys who represented his former employer in prior litigation.

Before the Court are the following motions: (i) defendants' motion to dismiss the amended complaint for failure to state a claim; (ii) plaintiff's cross-motion for leave to file a second amended complaint; (iii) defendants' motion for Rule 11 sanctions; and (iv) plaintiff's cross-motion for Rule 11 sanctions.

Plaintiff's cross-motion for leave to file a second amended complaint was filed in response to defendants' motion to dismiss. In their reply papers, however, defendants addressed the adequacy of the allegations of the proposed second amended complaint, and at oral argument both sides addressed the proposed second amended complaint. Hence, as a threshold matter, plaintiff's cross-motion for leave to file a second amended complaint is granted and the proposed second amended complaint is deemed filed as of the date the cross-motion was filed. In considering defendants' motion to dismiss, I have analyzed the issues presented on the basis of the second amended complaint.

For the reasons stated below, defendants' motion to dismiss is granted; defendants' motion for Rule 11 sanctions is granted; and plaintiff's cross-motion for Rule 11 sanctions is denied.

---

1. For purposes of deciding defendants' motion to dismiss, I have assumed to be true the allegations contained in plaintiff's second amended complaint. References to "Cmplt." are to the second amended complaint.

## STATEMENT OF THE CASE [1]

Defendant Sequa Corporation ("Sequa") is a diversified manufacturing corporation. From 1973 to 1986, plaintiff served as Sequa's vice president and treasurer. In 1986, plaintiff founded and became president, and later chief executive officer, of defendant Sequa Capital Corporation, a wholly owned subsidiary of Sequa ("SCC" and together with Sequa, the "Sequa Defendants"). Plaintiff was dismissed from his position as chief executive officer in January 1991, without warning and without any reasons given for his dismissal.

Immediately following his discharge, plaintiff was told by one of Sequa's attorneys that he would be given a severance package. About one month later, plaintiff met with defendants Alexander (Sequa's chairman), Krinsly (senior executive vice president and general counsel), Harmon (associate general counsel), and Gutterman (chief financial officer), purportedly to discuss the severance package. When plaintiff objected to Sequa's legal counsel being present, Alexander (who is an attorney) assured plaintiff that he would act as plaintiff's lawyer. Alexander further promised that he would protect plaintiff, that plaintiff would "not be hurt" by remaining at the meeting, and that Alexander would personally arrange the severance package as plaintiff's lawyer. (Cmplt. ¶¶ 22–23). The meeting lasted approximately 2–3 hours during which time defendants induced plaintiff to furnish information that was later used in a lawsuit against him.

While plaintiff was employed by Sequa, the Sequa Defendants maintained a relationship with a consulting company, GBJ Corporation ("GBJ"). In 1991, GBJ and its president, Jeffrey Gelmin, brought a lawsuit against the Sequa Defendants for unpaid fees and commissions (the "Sequa Case").[2] In October 1991, plaintiff met with Krinsly concerning the Sequa Defendants' relationship with GBJ and Gelmin. At that meeting, defendants attempted to coerce plaintiff into falsely giv-

---

2. The lawsuit was later re-captioned *Sequa, et al. v. GBJ and Gelmin* because GBJ's and Gelmin's federal claims were dismissed and federal jurisdiction derived from the Sequa Defendants' civil *RICO* claim.

ing testimony against Gelmin in the Sequa Case. Plaintiff, however, refused, and as a result defendants again denied plaintiff his severance package. (Cmplt. ¶ 31).

In August 1992, plaintiff was named as a co-defendant in the Sequa Case by the Sequa Defendants for allegedly conspiring with Gelmin to commit fraud against them. Plaintiff alleges that the Sequa Defendants knew the allegations against him were false and yet they proceeded to disseminate the false statements. (Cmplt. ¶ 31). In July 1993, the Sequa Defendants voluntarily discontinued their claims against plaintiff without prejudice, after the court in that case (Haight, J.) ruled that the Sequa Defendants were obligated to indemnify plaintiff for the costs of defending against the claims that they had asserted against him.

Defendants also purportedly coerced Edward J. Piszko, who served as administrative vice president of SCC at the same time plaintiff was president, into signing an affidavit containing false statements of wrongdoing by plaintiff and Gelmin. This affidavit was allegedly authored by defendants Shapot and Harmon and was used as a basis for the claims brought by the Sequa Defendants against plaintiff and Gelmin. (Cmplt. ¶¶ 36–46).

On July 30, 1992, Sequa filed an insurance claim for damages caused by employee dishonesty, based on the alleged dishonest acts of plaintiff, Piszko and Gelmin (the "Insurance Claim"). The claim was grounded, in part, on the allegedly false statements contained in the Piszko affidavit. (Cmplt. ¶ 47).

Plaintiff commenced this action on July 22, 1994, and amended his complaint on July 27, 1994. Plaintiff complains that defendants engaged in a "campaign to destroy plaintiff" through their various purportedly tortious acts. In the second amended complaint, plaintiff also alleges that defendant Brodsky—one of Sequa's attorneys in the Sequa Case—made a number of purportedly false

and defamatory statements about plaintiff in his opening statement to the Court at the trial of the Sequa Case. (Cmplt. ¶¶ 64a, b, c, d, e; *see also* Cmplt. ¶ 91j).

The second amended complaint seeks $23,996,000 in "[s]pecial damages," $50,000,000 in "[g]eneral damages," $221,988,000 in "[t]reble damages," and $50,000,000 in "[p]unitive damages."

## DISCUSSION

### I. Defendants' Motion To Dismiss

#### A. Standards for Rule 12(b)(6) Motion to Dismiss

In analyzing defendants' motion to dismiss for failure to state a claim, I must view plaintiff's second amended complaint in the light most favorable to plaintiff and accept all allegations contained in the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Annis v. County of Westchester*, 36 F.3d 251, 253 (2d Cir.1994). Giving plaintiff the benefit of the inferences in his favor, the complaint should not be dismissed unless it appears beyond a doubt that plaintiff can prove no set of facts that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–03, 2 L.Ed.2d 80 (1957); *Christ Gatzonis Electrical Contractor, Inc. v. New York City School Construction Authority*, 23 F.3d 636, 639 (2d Cir. 1994). With these standards in mind, I turn to defendants' motion to dismiss.

### B. Plaintiff's Claims

#### 1. Malicious Prosecution

To succeed on his claim for malicious prosecution of a civil action, plaintiff must show that: 1) defendants maliciously commenced and continued an action against plaintiff; 2) the proceeding was terminated in favor of plaintiff or under circumstances "such that innocence is indicated"[3]; 3) probable cause for the proceeding was lacking;

---

3. *Ward v. Silverberg*, 206 A.D.2d 522, 614 N.Y.S.2d 757, 758–59 (2d Dep't 1994) (*citing Hollender v. Trump Village Cooperative*, 58 N.Y.S.2d 420, 425, 461 N.Y.S.2d 765, 768, 448 N.E.2d 432, 435 (1983)), *aff'd*, 85 N.Y.2d 993, 652 N.E.2d 914, 629 N.Y.S.2d 168 (1995).

At oral argument, plaintiff's counsel conceded that one of the elements of a malicious prosecution claim was a termination of the prior lawsuit either on the merits or under circumstances indicating innocence. (Tr. at 14).

and 4) plaintiff's person or property was interfered with by the issuance of a provisional remedy, *e.g.*, attachment or arrest. *See Sharma v. Skaarup Ship Management Corp.*, 699 F.Supp. 440, 448 (S.D.N.Y.1988), *aff'd*, 916 F.2d 820 (2d Cir.1990), *cert. denied*, 499 U.S. 907, 111 S.Ct. 1109, 113 L.Ed.2d 218 (1991); *Molinoff v. Sassower*, 99 A.D.2d 528, 529, 471 N.Y.S.2d 312, 313–14 (2d Dep't 1984).

■ Defendants contend that plaintiff's claim for malicious prosecution should be dismissed because the proceeding did not result in the issuance of a provisional remedy that interfered with plaintiff's person or property. I agree. Plaintiff essentially concedes that no provisional remedy, such as attachment or arrest, was issued against him in the Sequa Case. (*See* Pl.Mem. in Opp. to Motion to Dismiss at 6). This failure to allege the issuance of a provisional remedy is fatal to plaintiff's malicious prosecution claim. *See Church of Scientology of California v. Siegelman*, 94 F.R.D. 735, 736 (S.D.N.Y.1982) (*citing Kalso Systemet v. Jacobs*, 474 F.Supp. 666, 670 (S.D.N.Y.1979)) (malicious prosecution claim that fails to allege issuance of provisional remedy is defective); *Sokol v. Sofokles*, 136 A.D.2d 535, 536, 523 N.Y.S.2d 155, 157 (2d Dep't 1988) (dismissal of claim for malicious prosecution affirmed since "mere service of a summons and complaint without further interference from some provisional remedy does not rise to the level of malicious prosecution"); *Molinoff*, 471 N.Y.S.2d at 314 (affirming dismissal of malicious prosecution claim where amended complaint failed to allege sufficient interference with plaintiff's person or property).[4]

Defendants argue that the malicious prosecution claim should also be dismissed on the independent grounds that the discontinuance of the Sequa Case against plaintiff was not a termination of that proceeding in his favor. In the Sequa Case, Judge Haight ruled that the Sequa Defendants were obligated under BCL § 724(c) to indemnify plaintiff for his legal costs in the Sequa Case.[5] As a result of Judge Haight's ruling, the Sequa Defendants were put in the position of reimbursing plaintiff for his legal expenses in defending against claims asserted by the Sequa Defendants themselves. Consequently, shortly after Judge Haight rendered his decision, the Sequa Defendants chose to discontinue their claims against plaintiff in the Sequa Case "without prejudice."

Plaintiff contends that the discontinuance of the claims against him in the Sequa Case was a termination in his favor. (Pl.Mem. in Opp. to Motion to Dismiss at 5). That contention, however, is based on a patent misreading of Judge Haight's decision.

Paragraph 55 of the second amended complaint alleges:

In over two years of sham "investigations," of attempts to buy O'Brien's false testimony, and of groundless litigation, defendants found no genuine evidence to support their claims, yet they persisted out of pure malice. Finally, *the court interceded.* In July 1993, the Honorable Judge Charles S. Haight, *having found no evidence that O'Brien had obtained even a penny of the millions he was accused of taking* ruled that Sequa and SCC would be required either to dismiss their case or to advance the costs of O'Brien's legal defense. Promptly thereafter, Sequa and SCC dismissed O'Brien from the case.

---

4. Plaintiff's argument that the existence of a "special injury," in lieu of a provisional remedy, is sufficient to state a claim for malicious prosecution (Pl.Mem. in Opp. to Motion to Dismiss at 6) is rejected. New York courts have consistently required plaintiffs to allege that a provisional remedy was issued for a malicious prosecution claim. The cases cited by plaintiff do not hold otherwise. *See, e.g., Groat v. Town Board of Glenville*, 73 A.D.2d 426, 426 N.Y.S.2d 339 (3d Dep't 1980) (suspension of officer without pay and later dismissal by disciplinary committee held to be sufficient interference with plaintiff's person to constitute provisional remedy); *Watson*

*v. New York*, 57 Misc.2d 542, 293 N.Y.S.2d 348 (N.Y.Civ.Ct.1968) (provisional remedy requirement met where plaintiff was ordered to appear at paternity proceeding).

5. Since Judge Haight's decision is referenced in the second amended complaint, it may properly be considered in resolving defendants' motion to dismiss. *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Goldman v. Belden*, 754 F.2d 1059, 1065–66 (2d Cir.1985).

(Emphasis added). The highlighted statements suggest that Judge Haight "interceded" and "found" that there was "no evidence" that plaintiff had engaged in wrongdoing. These suggestions, however, are grossly misleading, for Judge Haight simply held that plaintiff's denials of wrongdoing and "protestations of innocence" raised "genuine issues of fact" sufficient to warrant indemnification of legal expenses under BCL § 724(c). *Sequa Corp. v. Gelmin,* 828 F.Supp. 203, 207 (S.D.N.Y.1993).

Indeed, in concluding that O'Brien was entitled to indemnification, Judge Haight acknowledged that he was applying a "far less demanding standard" than the standard for finding genuine issues of material fact sufficient to withstand a motion for summary judgment, and he noted that a corporate officer seeking indemnification under BCL § 724(c) need not even show a probability of success. *Id.* at 7. Moreover, Judge Haight denied O'Brien's motion to dismiss the complaint against him for failure to state a claim, recognizing that the Sequa Defendants adequately pled a civil RICO claim against plaintiff for fraud. *Id.* at 2. Hence, Judge Haight's decision simply cannot be reasonably read as a finding on the merits in favor of O'Brien, nor can it be interpreted as a finding that plaintiff did not engage in any wrongdoing, nor can defendants' dismissal "without prejudice" of their claims against O'Brien in these circumstances be deemed a termination on the merits. *See Ward v. Silverberg,* 85 N.Y.2d 993, 652 N.E.2d 914, 629 N.Y.S.2d 168 (1995) (where plaintiff's guilt or innocence in underlying criminal case was left "unanswered" because the case was dismissed "on consent" after colloquy between court and counsel and plea by defense for a dismissal "in all fairness to this lady," no malicious prosecution claim could lie); *Morrill v. Norstar Bank,* 161 A.D.2d 1096, 1097, 557 N.Y.S.2d 655, 656 (3d Dep't 1990) (dismissal of criminal charges "without prejudice" essentially for "inartful pleading" was not a dismissal on the merits and could not be basis of malicious prosecution case); *Sokol v. Sofokles,* 136 A.D.2d 535, 536, 523 N.Y.S.2d 155, 157 (2d Dep't 1988) (dismissal of underlying civil action for failure to prosecute was not a "favorable determination" of

the prior action "on the merits" and hence could not be a basis for malicious prosecution claim).

At oral argument, plaintiff's counsel argued that there was other evidence of O'Brien's "innocence" with respect to the claims asserted against him in the Sequa Case: O'Brien's deposition testimony; "reams and reams of documents" produced in discovery; and the testimony of other witnesses. (Tr. at 16–17). This argument, however, must be rejected, for the only allegations set forth in the second amended complaint to support the contention that the Sequa Case terminated in favor of plaintiff are the allegations based on Judge Haight's purported "interce[ssion]" and finding of "no evidence" of wrongdoing. (*See* Cmplt ¶ 55; *see also id.* ¶ 84). Plaintiff cannot now again re-write his complaint by abandoning these key allegations.

Accordingly, the malicious prosecution claim is dismissed, both because the second amended complaint fails to allege the issuance of a provisional remedy or other process and because it fails to properly allege a termination of the underlying lawsuit in favor of plaintiff or under circumstances indicating his "innocence."

### 2. *Abuse of Process*

█ An abuse of process claim has three essential elements:

> (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective.

*Curiano v. Suozzi,* 63 N.Y.2d 113, 116, 469 N.E.2d 1324, 1326, 480 N.Y.S.2d 466, 468 (1984) (citations omitted); *see also Brown v. Bethlehem Terrace Associates,* 136 A.D.2d 222, 225, 525 N.Y.S.2d 978, 980 (3d Dep't 1988) (elements of abuse of process are "(1) the perverted use of (2) regularly issued process, (3) with the intent of causing harm without justification ... (4) that results in special damages").

Plaintiff concedes that issuance of a summons and complaint alone is not sufficient to sustain a claim for abuse of process (Pl.Mem. in Opp. to Motion to Dismiss at 7), but he

relies on the service of a deposition subpoena on him, alleging that defendants made false statements to the Court in the Sequa Case regarding the necessity of deposing plaintiff, as a nonparty witness, after he had already been deposed in the case as a party, and alleging further that the subpoena was misused.

■ For a plaintiff to prevail on an abuse of process claim based on the issuance of a subpoena, the plaintiff must allege and show that the subpoena was issued not to obtain material and necessary testimony but to achieve the collateral objective of exerting economic pressure on the other party to the action. *See Board of Education v. Farmingdale Classroom Teachers Ass'n,* 38 N.Y.2d 397, 403, 380 N.Y.S.2d 635, 643, 343 N.E.2d 278, 283 (1975); *Ginsberg v. Ginsberg,* 84 A.D.2d 573, 574, 443 N.Y.S.2d 439, 441 (2d Dep't 1981). Here, the second amended complaint fails to meet these requirements as a matter of law.

First, the second amended complaint itself alleges that O'Brien was a "key witness in the case," referring to the Sequa Case. (Cmplt. ¶ 64e). Indeed, at oral argument plaintiff's counsel conceded that plaintiff was "an important witness." (Tr. at 21). As of the time of oral argument in this case, O'Brien had testified for six days at the trial of the Sequa Case, and it was anticipated that he would need to testify for another five days or longer. (*Id.*). Hence, it is clear from the allegations of the second amended complaint itself and plaintiff's counsel's own statements that the subpoena was issued at least in part for a legitimate purpose—to obtain plaintiff's admittedly material and necessary testimony. Plaintiff cannot show that the subpoena for his deposition was issued "without excuse or justification." The use of a subpoena to obtain admittedly important testimony simply cannot be an abuse of process.

■ Second, even assuming the subpoena and deposition were issued to "abuse and harass" O'Brien as the second amended complaint alleges, "[a] malicious motive alone . . . does not give rise to a cause of action for abuse of process." *Curiano v. Suozzi,* 63 N.Y.2d at 117, 480 N.Y.S.2d at 468, 469 N.E.2d at 1326 (citation omitted). Rather, the plaintiff must allege and show the misuse of process after it was issued. *Id.* Here, the second amended complaint contains no allegations about the misuse of the subpoena after it was issued other than the allegations that plaintiff was subjected to three days of deposition, purportedly resulting in lost compensation and general damages to his career and reputation. (*See* Cmplt. ¶ 71). These types of damages, however, are insufficient to support an abuse of process claim. *See Ann–Margret v. High Society Magazine, Inc.,* 498 F.Supp. 401, 407 (S.D.N.Y.1980) (holding that " 'interference' which results in a loss of business, injury to reputation, or expense arising from litigation [does not] constitute the type of interference with person or property necessary to sustain an abuse of process claim").

Since the allegations of the second amended complaint are insufficient to state an abuse of process claim, the second cause of action is dismissed.

### 3. *New York Judiciary Law § 487*

#### a. *The February 1991 Meeting*

■ Plaintiff alleges that defendant Alexander violated section 487 of the New York Judiciary Law by falsely assuring plaintiff that he would act as plaintiff's attorney during a meeting in February 1991, which led plaintiff to make certain statements that would later be used against him in the Sequa Case. Plaintiff also alleges that defendants Krinsly and Harmon aided and abetted Alexander in violating section 487.

Section 487 of the New York Judiciary Law is entitled "Misconduct by attorneys" and provides that an attorney in a pending lawsuit may not deceive or collude with intent to deceive the court or any party to that lawsuit. New York Judiciary Law § 487 (McKinney 1983).[6] Since no lawsuit was

---

6. Specifically, the statute provides:

An attorney or counselor who:

1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; . . .

pending when the alleged representations in question were made (indeed, the alleged representations were purportedly made a year and a half *before* the commencement of litigation), plaintiff's claim must be dismissed, for section 487 by its terms applies only to statements made to the court or any party to a lawsuit. *See Nardella v. Braff,* 621 F.Supp. 1170, 1172 (S.D.N.Y.1985); *Bankers Trust Co. v. Cerrato, Sweeney, Cohn, Stahl & Vaccaro,* 187 A.D.2d 384, 386, 590 N.Y.S.2d 201, 203 (1st Dep't 1992).

In response, plaintiff argues that the "essence of Alexander's deceit" when Alexander offered plaintiff his services was that he intended to make plaintiff a party to a planned lawsuit. Plaintiff acknowledges that no case law exists to support this contention, but rather asserts that it "surely lies within the ambit of the statute." (Pl.Mem. in Opp. to Motion to Dismiss at 9). Plaintiff's argument would require me to ignore the express language of the statute, and I will not do so.[7]

Plaintiff's claims against defendants for violation of section 487 based on the February 1991 meeting are dismissed.[8]

### b. *The Piszko Affidavit*

■ Plaintiff's next claim is based on the affidavit signed by Edward Piszko. Plaintiff alleges that defendants violated Judiciary

Law § 487 by preparing the Piszko affidavit, knowing it to be false, and using it as the basis for the purportedly groundless allegations that were made against O'Brien in the Sequa Case. Plaintiff also alleges that defendants wrote the false affidavit to deceive the Court in the Sequa Case into believing that defendants had genuine claims against plaintiff. Although the second amended complaint does not allege that the affidavit was submitted to the Court (as it apparently was not), it does allege that the Court "relied upon" the Piszko affidavit.[9] (Cmplt. ¶¶ 81, 81, 82, 83).

Plaintiff's attempt at oral argument to circumvent section 487's requirement that false statements be made to the Court by stating that the false statements in the Piszko affidavit were used as the basis of the complaint against plaintiff is simply unavailing. Since the Piszko affidavit was not submitted to the Court, it cannot be the basis for a violation of section 487. *See Nardella v. Braff,* 621 F.Supp. at 1172; *Bankers Trust Co. v. Cerrato, Sweeney, Cohn, Stahl & Vaccaro,* 187 A.D.2d at 386, 590 N.Y.S.2d at 203.

What plaintiff really is alleging is that the defendants' claims against him in the Sequa Case were unfounded. That is an insufficient basis, however, for asserting a claim

Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

7. At oral argument, when I pressed plaintiff's counsel for authority for his novel proposition, plaintiff's counsel simply moved on to the next cause of action. (Tr. at 23).

8. I would note as an aside that the claim, apart from its legal insufficiency, is absurd as a factual matter. Plaintiff alleges that when he met with Alexander, the chairman of Sequa who happened to be a lawyer, for purposes of negotiating a severance package, Alexander agreed to act as *plaintiff's* attorney. (Cmplt. ¶¶ 21–23). Not only am I skeptical that the chairman of a company would offer to act as the attorney for an employee whom he was firing, but even assuming that Alexander did agree to act as plaintiff's attorney, I cannot believe that anyone with plaintiff's background and experience would have accepted such a proposal.

9. At oral argument, counsel for plaintiff argued that "an affidavit can constitute a [violation of] Section 487 whether or not it is actually filed

with the court" (Tr. at 25) and referred this Court to *Hall v. New York State Bar Ass'n,* 43 A.D.2d 465, 352 N.Y.S.2d 296 (4th Dep't 1974). Plaintiff's reliance on *Hall,* however, is misplaced. *Hall,* a criminal defense attorney, intimidated a witness to an armed robbery into making an unsworn statement recanting the witness's prior testimony before the grand jury and used that unsworn statement to induce the witness into making a sworn statement. Hall obtained the sworn recantation so that the witness would not testify at his client's trial without risking prosecution for perjury. Hall also secreted the witness and prevented her from appearing in court while at the same time deceiving the court by stating that he did not know the witness's whereabouts. For all of these actions, Hall was held to have violated section 487 of the New York Judiciary Law.

The conduct complained of here obviously does not rise to the level in *Hall.* It was Hall's conduct in intimidating a witness and lying to the court that was held to have violated section 487.

under section 487 of the Judiciary Law. *See Thomas v. Chamberlain, D'Amanda, Oppenheimer & Greenfield,* 115 A.D.2d 999, 497 N.Y.S.2d 561, 562 (4th Dep't 1985), *appeal dismissed,* 67 N.Y.2d 1005, 502 N.Y.S.2d 1006, 494 N.E.2d 111 (1986); *see also Goldner v. Sullivan, Gough, Skipworth, Summers & Smith,* 105 A.D.2d 1149, 1151, 482 N.Y.S.2d 606, 609 (4th Dep't 1984) (holding that absence of allegation of specific fraudulent or deceitful communication or statement to the court fatal to Section 487 claim).[10]

I note that there are two facts alleged in this cause of action that plainly are inaccurate and are extremely misleading. First, paragraph 83 of the second amended complaint alleges that the Court in the Sequa Case "relied upon the Piszko affidavit," when that clearly is not the case. Plaintiff concedes in his memorandum of law that the affidavit was not filed with the Court. (Pl. Mem. in Opp. to Motion to Dismiss at 12).

Second, paragraph 84 of the second amended complaint suggests that the Court in *Sequa* somehow held that defendants' claims against plaintiff in the Sequa Case were deficient or groundless.[11] As discussed above, however, Judge Haight made no such ruling. The fact that defendants chose to discontinue their claims against plaintiff, without prejudice, rather than pay for his legal fees to defend against those very claims is not surprising, but hardly an admission that those claims were groundless.

Accordingly, plaintiff's claim of violation of section 487 of the New York Judiciary Law based on the Piszko affidavit is dismissed.

#### 4. *Defamation*

In the fifth cause of action of the second amended complaint, plaintiff alleges that defendants defamed him by making and repeating numerous false statements to various people. Plaintiff claims that defendants made false accusations about him in February 1993 to officers of Trac Lease, Inc. (Cmplt. ¶¶ 91b, c). He claims further that certain of the defendants repeated the defamatory remarks during a meeting with officers of Trac Lease, Inc. in October 1994, during which defendants asked the Trac Lease, Inc. representatives to testify in the Sequa Case. (Cmplt. ¶ 91d). Plaintiff also complains of several allegedly defamatory statements made during the course of the Sequa Case, including comments allegedly made (i) to Leonard Nave during a deposition in August 1993 and later at a meeting in February 1994, (ii) during defendant Brodsky's opening remarks at trial of the Sequa case, (iii) in the Piszko Affidavit, (iv) in the Sequa complaint, and (v) to Herschel Salan, a former employee of SCC, in an effort to get him to testify against at trial. (Cmplt. ¶¶ 88, 91g, h, i, j).

Plaintiff's defamation claims must be dismissed, for they are deficient as a matter of law.

First, the statute of limitations for defamation claims under New York law is one year. *See* N.Y.Civ.Prac.L. & R. § 215(3) (McKinney 1990).[12] Thus, plaintiff's claim for defamation based on the statements to the Trac Lease officers in February 1993, more than one year prior to the filing of the lawsuit (July 1994), is time-barred. Accordingly, plaintiff's claim for defamation based on these statements is dismissed.

Second, the statements made to the Trac Lease officers in October 1994, to Leonard Nave, in defendant Brodsky's opening statement at trial, in the Piszko Affidavit, in the Sequa complaint, and to Salan cannot form the basis of a defamation claim since they are absolutely privileged.

---

10. An identical or similar claim asserted by Gelmin and GBJ was dismissed by the New York Supreme Court, Suffolk County, in *Gelmin and GBJ Corp. v. Quicke, et al.,* Index No. 18327/93.

11. Paragraph 84 alleges in part:
Only when the groundlessness of defendants' allegations against O'Brien became apparent did the Court have the opportunity to confront defendants with the deficiency of their case, at which point defendants dismissed the action.

12. Plaintiff further alleges that defendants repeated their defamatory remarks at a meeting with the Trac Lease officers in October 1994. (Cmplt. ¶ 91d). This purported republication does not salvage the original untimely statements. *See Egleston v. Kalamarides,* 58 N.Y.2d 682, 684, 458 N.Y.S.2d 530, 444 N.E.2d 994 (1982). The repetition of the allegedly defamatory statements, however, may state a separate claim for defamation, as discussed below.

■ Under New York law, "[i]n the context of a legal proceeding, statements by parties and their attorneys are absolutely privileged if, by any view or under any circumstances, they are pertinent to the litigation." *Grasso v. Mathew,* 164 A.D.2d 476, 564 N.Y.S.2d 576, 578 (3d Dep't), *appeal dismissed,* 77 N.Y.2d 940, 569 N.Y.S.2d 613, 572 N.E.2d 54 (1991). *See also Bridge C.A.T. Scan Associates v. Ohio–Nuclear Inc.,* 608 F.Supp. 1187, 1197 (S.D.N.Y.1985); *Park Knoll Associates v. Schmidt,* 59 N.Y.2d 205, 464 N.Y.S.2d 424, 451 N.E.2d 182 (1983). The test of "pertinency" is extremely broad:

> The absolute privilege embraces anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability.

*Grasso v. Mathew,* 564 N.Y.S.2d at 578.

The absolute privilege has been applied not only to statements made in pleadings and in court, but also to statements made: in a letter from an attorney to subpoenaed witnesses, *Youmans v. Smith,* 153 N.Y. 214, 47 N.E. 265 (1897); in letters between attorneys and parties or communications by attorneys to the court, *Simon v. Potts,* 33 Misc.2d 183, 225 N.Y.S.2d 690 (Sup.Ct.Albany Co.1962); during offers of settlement by attorneys, *Zirn v. Cullom,* 187 Misc. 241, 63 N.Y.S.2d 439 (Sup.Ct.N.Y.Co.1946); during an attorney's examination of records pursuant to an order of discovery, *Kraushaar v. LaVin,* 39 N.Y.S.2d 880 (Sup.Ct.Queens Co.1943); by an attorney in a magazine article quoting

from and restating the allegations of the complaint, *The Savage Is Loose Co. v. United Artists Theatre Circuit, Inc.,* 413 F.Supp. 555 (S.D.N.Y.1976); in a letter from an attorney to the Grievance Committee of the Association of the Bar of the City of New York, *Wiener v. Weintraub,* 22 N.Y.2d 330, 239 N.E.2d 540, 292 N.Y.S.2d 667 (1968); and in an information subpoena mailed to a plaintiff's employer, *Mancini v. Marine Midland Bank,* 185 A.D.2d 682, 586 N.Y.S.2d 61 (4th Dep't), *appeal denied,* 80 N.Y.2d 760, 605 N.E.2d 874, 591 N.Y.S.2d 138 (1992).[13]

■ The statements in question were made during the course of the Sequa Case and in preparation for trial and are "possibly or plausibly" relevant or pertinent to the litigation. The statements in the pleading and opening statement were indisputably made as part of the actual court proceedings; the affidavit was certainly "possibly or plausibly" relevant, as it apparently set out alleged wrongdoings by O'Brien that were at issue in the Sequa Case; and the statements to the Trac Lease, Inc. officials and Salan were made to persons with knowledge of and connections to the events in issue.[14] Thus, they are absolutely privileged and plaintiff's claim for defamation based on these statements is dismissed. *See Youmans v. Smith,* 153 N.Y. 214, 47 N.E. 265 (1897) (absolute privilege protects letters sent to subpoenaed witness); *Mancini v. Marine Midland Bank,* 185 A.D.2d 682, 586 N.Y.S.2d 61 (4th Dep't), *appeal denied,* 80 N.Y.2d 760, 605 N.E.2d 874, 591 N.Y.S.2d 138 (1992) (absolute privi-

**13.** The absolute privilege was held not to apply to "an attorney's out-of-court communications to persons unrelated to litigation," where the attorneys made telephone calls and wrote letters to clients of the plaintiff accountant in a blanket effort to gather information about him. *Schulman v. Anderson Russell Kill & Olick,* 117 Misc.2d 162, 166, 458 N.Y.S.2d 448, 452 (Sup. Ct.N.Y.Co.1982). The court noted that the communications were directed to "persons wholly unconnected to the [lawsuit in question] in an alleged effort to elicit information and identify potential witnesses." 117 Misc.2d at 167, 458 N.Y.S.2d at 453. The court did, however, apply a qualified privilege. 117 Misc.2d at 168, 458 N.Y.S.2d at 454.

In the present case, the communications were not directed at "persons wholly unconnected" to the Sequa Case. Rather, they were directed at members of the Trac group, who had knowledge

of the events in issue (Cmplt. ¶¶ 91b, c, d), and to Herschel Salan, a former employee of SCC. (Cmplt. ¶ 91i).

**14.** Plaintiff's defamation claims based on the pleadings and counsel's opening statement in the Sequa Case are particularly meritless, for there can be no doubt whatsoever that those in-court statements are absolutely privileged. At oral argument, plaintiff's counsel argued that the absolute privilege "in fact is a bit less than absolute" and that "statements that are uttered out of malice are not protected by the absolute privilege." (Tr. 27). Plaintiff's counsel is flatly wrong in this respect, for the essence of the absolute privilege defense is that "it confers immunity from liability regardless of motive." *Park Knoll Associates,* 59 N.Y.2d at 209, 451 N.E.2d at 184, 464 N.Y.S.2d at 426.

lege protects statements contained in information subpoena sent to plaintiff's employer); *Friedman v. Alexander*, 79 A.D.2d 627, 628, 433 N.Y.S.2d 627, 628 (2d Dep't 1980) (affirming dismissal of complaint since allegedly defamatory statements made in letters to members of creditors committee and other persons "legitimately involved" in bankruptcy proceeding were absolutely privileged); *see also Stukuls v. State of New York*, 42 N.Y.2d 272, 275, 397 N.Y.S.2d 740, 742, 366 N.E.2d 829, 831 (1977).

The defamation claim based on the statements purportedly made to Herschel Salan also must fail because the purportedly defamatory words are not identified, with one exception. The one exception is that plaintiff alleges that Quicke defamed him by stating that "O'Brien made a loan in order to obtain a bribe of $250,000 in cash by Gelmin to pay for O'Brien's divorce." (Cmplt. ¶ 91i). This statement, however, is incomprehensible, and it cannot serve as a basis for a defamation claim.

Finally, plaintiff attempts to circumvent the statute of limitations and the absolute privilege obstacles by alleging that defendants repeated their defamatory statements. The second amended complaint, however, fails to identify what allegedly defamatory statements were repeated and it fails to allege which false statements were uttered by whom. (*See, e.g.*, Cmplt. ¶¶ 92, 93 and 94). Hence, these paragraphs are insufficiently pled and must be dismissed as well. *Vardi v. Mutual Life Ins. Co.*, 136 A.D.2d 453, 456, 523 N.Y.S.2d 95, 98 (1st Dep't 1988) (holding that defamation causes of action were correctly dismissed where they failed "to set forth the particular words complained of (CPLR 3016(a)) or the time, manner and persons to whom the publications were made"); *Buffolino v. Long Island Savings Bank, FSB*, 126 A.D.2d 508, 510, 510 N.Y.S.2d 628, 631 (2d Dep't 1987) (same).

## 5. *Injurious Falsehood, Negligence and General Tort*

Plaintiff claims that defendants made injurious falsehoods against him, were negligent in the preparation of the insurance claim and Piszko affidavit, and committed a general tort with respect to the insurance claim. Each of these claims, however, are in essence a restatement of plaintiff's defamation claim, which I have dismissed. Accordingly, each of these claims must be dismissed as well.

### a. *Injurious Falsehood*

Plaintiff's claim for injurious falsehood relies on the same statements that form the basis of the defamation claim. Additionally, plaintiff's damages for the injurious falsehood claim are exactly the same as those alleged for the defamation claim, although plaintiff takes care not to state that the damages are the result of injury to his reputation. Since plaintiff's injurious falsehood claim is duplicative of his defamation claim, it is dismissed.[15] *See Riddell Sports Inc. v. Brooks*, 872 F.Supp. 73, 76 (S.D.N.Y.1995) (injurious falsehood claim that was in reality a defamation claim dismissed for statute of limitations violation; court held "one year limitations period applicable despite the labels which counterplaintiffs apply to their [injurious falsehood] claims" since the essence of claimed injury was one to reputation); *Santagada v. Lifedata Medical Services, Inc.*, 1993 WL 378309, *5 (S.D.N.Y.1993) (in dismissing action based on defendant's erroneous conclusion that plaintiff had taken cocaine, court noted that New York courts maintained a "straightforward rule: if an action is one solely or primarily claiming injury to reputation, it is in the nature of a defamation action for purposes of the applicable statute of limitations, regardless of the conduct that allegedly caused the injury").

### b. *Negligence*

In his negligence claim, plaintiff alleges that defendants were negligent in preparing

15. At oral argument, counsel for plaintiff maintained that the injurious falsehood claim concerns false statements that were not included in the defamation claim. The proposed second amended complaint, however, does not detail these statements, but rather simply repeats the allegations contained in the defamation claim. Furthermore, the proposed second amended complaint conclusorily states that defendants "made false and misleading statements harmful to O'Brien's pecuniary and business interests." (Cmplt. ¶ 97). This is simply insufficient under New York law to sustain a claim for injurious falsehood. *See SRW Associates v. Bellport Beach Property Owners*, 129 A.D.2d 328, 517 N.Y.S.2d 741 (2d Dep't 1987).

the Insurance Claim and the Piszko affidavit, both of which contain allegedly defamatory statements. The negligence claim is deficient, however, for it fails to specify any duty owed to plaintiff by defendants. Rather, plaintiff simply states that defendants "breached the standards of careful inquiry and disclosure which business persons and attorneys must exercise in their investigations, reports, and claims" (Cmplt. ¶ 102), setting forth the novel argument that an attorney owes a duty of care to the opposing party. Plaintiff, however, fails to cite a single case in support of this argument.

The negligence claim is essentially a restatement of plaintiff's defamation claim: plaintiff states that defendants' actions in preparing documents containing false statements caused damage to his career and reputation. Accordingly, plaintiff's negligence claim must be dismissed as well for the reasons stated above. *See Ramsay v. Bassett Hospital,* 113 A.D.2d 149, 151, 495 N.Y.S.2d 282, 284 (3d Dep't 1985) (court held plaintiff's negligence claim was in reality one for defamation since plaintiff sought redress for injury to his reputation and career and therefore subject to one year statute of limitations).

#### c. General Tort

Plaintiff contends that his ninth claim, for "general tort," is based on the "principles of New York Law enunciated by the First Department in *Singer v. Jefferies & Company, Inc.,*" 160 A.D.2d 216, 553 N.Y.S.2d 346 (1st Dep't 1990). (Cmplt. ¶ 109). Singer was employed by Jefferies & Co. as a senior vice president in the corporate finance department. In March 1985, Singer was instructed by his employer to dictate an invoice to Ivan F. Boesky Corporation for $3,000,000. Eighteen months later, he left Jefferies & Co. and joined Salomon Brothers. In November 1986, Singer was subpoenaed for information relating to the Ivan Boesky insider trading investigation; due to his involvement in the Boesky matter, Salomon Brothers requested plaintiff's resignation. Despite Singer's cooperation with the government and his later exoneration, he sustained a prolonged period of unemployment. He then sued his former employer, alleging that he had been injured in his trade and profession and had suffered injury to his reputation.

The Singer court held that the facts of that case stated a cause of action sounding in tort that could not be "precisely categorize[d]." *Id.,* 553 N.Y.S.2d at 348. Rather, the claims asserted by plaintiff were analogous to a variety of torts, including fraud and misrepresentation, malicious prosecution, and breach of contract. *Id.* The court rejected plaintiff's attempts to construe the action as one for defamation because Singer did not allege that defendants published any defamatory statements about him. Rather, the appellate court held that the six-year statute of limitations for fraud cases applied since the case was one sounding primarily in fraud. *Id.*

Here, plaintiff alleges that defendants enmeshed him in a fraudulent scheme to destroy Gelmin's business and make a false insurance claim. Unlike Singer, who was injured by the defendants' fraudulent activities that led the court to apply the statute of limitations for fraud, plaintiff's injuries derive not from his involuntary involvement in defendants' allegedly fraudulent schemes, but from the alleged defamatory statements made about him. (*See* Cmplt. ¶ 110) ("Defendants knew they could not file the insurance claim without accusing an employee of defalcations, and O'Brien was the employee they selected."). Thus, even accepting the concept of a "general tort" for purposes of this motion, plaintiff's claim for general tort is, in reality, one for defamation. As the First Department has held,

> It would make little sense to hold that plaintiff may not prevail on a cause of action, having failed to establish certain elements, which are essential thereto, and then in the exercise of flexibility, apply a different name to it, and without correcting any of the fatal defects, permit the cause of action (absent a unique quality) to stand.

*Belsky v. Lowenthal,* 62 A.D.2d 319, 322, 405 N.Y.S.2d 62, 65 (1st Dep't), *aff'd,* 47 N.Y.2d 820, 392 N.E.2d 560, 418 N.Y.S.2d 573 (1978); *accord Kalso Systemet, Inc. v. Jacobs,* 474 F.Supp. at 671.

Accordingly, plaintiff's claim for general tort is dismissed for the same reasons the defamation cause of action was dismissed.

### 6. *Prima Facie Tort*

█ Plaintiff's next claim is for prima facie tort. To succeed on a claim for prima facie tort under New York law, plaintiff must show "disinterested malevolence"—that defendants' sole motive was a desire to harm plaintiff. *Curiano v. Suozzi*, 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 469, 469 N.E.2d 1324, 1327 (1984).

█ Plaintiff's own allegations in the second amended complaint reveal that defendants had other motives in acting against plaintiff: 1) avoiding payment to others (Gelmin and GBJ) (Cmplt. ¶ 59); and 2) recovering under an insurance policy. (Cmplt. ¶ 36). It is immaterial that defendants may have had other allegedly reprehensible motives, since plaintiff has failed to show that defendants' actions were motivated *solely* by malice. *See Cohen's West 14th Street Corp. v. Parker 14th Associates*, 125 A.D.2d 249, 509 N.Y.S.2d 340 (1st Dep't 1986) (claim for prima facie tort dismissed although plaintiff alleged defendant engaged in conduct that was "malicious, illegal, wrongful, intentional and without any basis in law or fact" with the intent to obtain the cancellation of plaintiff's lease, since complaint itself alleged that defendant's actions were motivated by an economic interest and not solely by malice). Hence, since the second amended complaint does not allege that the sole motive underlying defendants' actions was disinterested malevolence, plaintiff's claim for prima facie tort must be dismissed. *See Rad Advertising, Inc. v. United Footwear Organization, Inc.*, 154 A.D.2d 309, 310, 546 N.Y.S.2d 597, 598 (1st Dep't 1989) (claim for prima facie tort dismissed where defendants' actions were motivated by desire to avoid payment of certain commercial charges) (*citing Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983)).

### 7. *Tortious Interference with Contract*

Plaintiff's last claim is for tortious interference with contract: plaintiff alleges that certain John Doe defendants, acting with malice, sent a copy of the Sequa complaint to his new employer in 1993, which resulted in his being fired. This claim must be dismissed because the Court's jurisdiction over this case is based on diversity and the citizenship of the John Doe defendants is unknown. *See* 28 U.S.C. § 1332(a). It is plaintiff's burden to show the existence of subject matter jurisdiction, and he has failed to do so. *See Keene Corp. v. Fiorelli*, 14 F.3d 726, 730 (2d Cir.1993); *Jones v. Wide World of Cars, Inc.*, 820 F.Supp. 132, 135 (S.D.N.Y.1993).

## II. *The Cross–Motions for Rule 11 Sanctions*

█ Defendants seek Rule 11 sanctions against Charles B. Manuel, Jr., Esq., plaintiff's attorney, for purportedly false statements made by Mr. Manuel in oral argument of defendants' motion to dismiss. In response, plaintiff filed a cross-motion for Rule 11 sanctions against Brooks R. Burdette, Esq. and Schulte Roth & Zabel for purportedly false statements made by Mr. Burdette in his affidavit in support of defendants' Rule 11 motion. Both sides have complied with the "safe-harbor" provisions of Rule 11 as it was amended on April 22, 1993, effective December 1, 1993.

Plaintiff's cross-motion for sanctions is denied, for there simply is no basis for the imposition of sanctions against Mr. Burdette or Schulte Roth & Zabel. I am, however, extremely troubled by certain statements made by Mr. Manuel; hence, defendants' motion for Rule 11 sanctions is granted.

Rule 11 provides in relevant part as follows:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... the claims, defenses and other legal contentions therein are warranted by existing law ... [and] the allegations and other factual contentions have evidentiary support. ...

Rule 11 is "aimed at curbing abuses of the judicial system." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397, 110 S.Ct. 2447, 2457, 110 L.Ed.2d 359 (1990). It is intended "to maintain the integrity of the system of federal practice and procedure, . . . to deter baseless filings and curb abuses." *Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533, 552–53, 111 S.Ct. 922, 934, 112 L.Ed.2d 1140 (1991).

In my view, plaintiff's counsel exceeded the bounds of zealous advocacy with respect to at least two sets of statements made at oral argument.[16]

First, at oral argument, plaintiff's counsel stated:

> The fact is that at that time [when defendants voluntarily discontinued their claims against O'Brien in the Sequa Case] it had become absolutely clear that nothing against Mr. O'Brien had been proved. Indeed, nothing had been properly pleaded from the outset.

(Tr. 18). These statements were a continuation of the misleading statements in the second amended complaint that Judge Haight had "interceded," had "found no evidence" of wrongdoing by plaintiff, and "confront[ed] defendants with the deficiency of their case." (Cmplt. ¶¶ 55, 84). Of course, as already noted, Judge Haight made no such findings and did not absolve plaintiff of wrongdoing. Moreover, the statement that "nothing had been properly pleaded from the outset" is squarely contradicted by Judge Haight's holding that "Sequa's complaint adequately charges [O'Brien] with personal participation in the underlying fraud." Indeed, Judge Haight denied plaintiff's motion to dismiss the Sequa complaint against him for failure to state a claim.[17]

Second, at oral argument, plaintiff's counsel stated:

> Before Mr. O'Brien was served with the second round of subpoenas, one of Mr. Brodsky's colleagues at Schulte, Roth & Zabel telephoned Mr. O'Brien's *employer*

between eight and ten times over a span of two days, informing him that the judge had ordered him to appear for further testimony in the case. Message were left at the office there. Questions were circulated around the office about what was going on.

> That was not required. That was done to leave a very sour taste with Mr. O'Brien's *employer* regarding what he was up to . . . .

(Tr. 20). These comments were clearly intended to suggest that defendants were seeking to sabotage plaintiff's relationships with his employer and his ability to earn a living. In fact, however, as plaintiff himself makes clear in his own affidavit, the calls were placed not to plaintiff's *employer*, but to an office that plaintiff was apparently using at his former *attorney's* office. (O'Brien Aff. ¶ 2). Even assuming that plaintiff was nonetheless embarrassed by the telephone calls made to his former attorney's office, still the actual situation was substantially different from the picture that plaintiff's counsel sought to portray at oral argument. Remarkably, instead of acknowledging his error, plaintiff's counsel contends that his statement at oral argument "was an understatement." (Manuel Aff. ¶ 4).

Plaintiff's counsel argues that Rule 11 sanctions are not appropriate in this case because "[s]tatements at oral argument are not 'pleading[s], written motion[s], or other paper[s]' within the meaning of" Rule 11. (Mem. in Supp. of Pl. Cross–Motion for Sanctions and in Opp. to Def. Motion for Sanctions at 5). In short, plaintiff's counsel contends that Rule 11 sanctions may not be imposed for "oral advocacy." These contentions are rejected.

First, by its terms, Rule 11 applies to the "presenting to the court," whether by "signing, filing, submitting, or *later advocating*," of a "pleading, written motion, or other paper" signed by an attorney or unrepresented party. Fed.R.Civ.P. 11(b) (emphasis added).

---

**16.** As to the other factual statements addressed by defendants, while I agree that plaintiff's counsel may have overstated matters, I do not find that Rule 11 was violated.

**17.** Plaintiff's counsel's suggestion that he was referring only to the factual foundation for the Sequa complaint when he commented that "nothing had been properly pleaded from the outset" (Manuel Aff. ¶ 3) is simply unavailing.

The Notes of the Advisory Committee on the Federal Rules for the 1993 amendments provide as follows:

> The rule applies only to assertions contained in papers filed with or submitted to the court. It does not cover matters arising for the first time during oral presentations to the court, when counsel may make statements that would not have been made if there had been more time for study and reflection. However, *a litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have merit.* For example, an attorney who during a pretrial conference insists on a claim or defense should be viewed as "presenting to the court" that contention and would be subject to the obligations of subdivision (b) measured as of that time....

Here, plaintiff's counsel "reaffirm[ed]" representations made in the second amended complaint and plaintiff's papers in opposition to defendants' motion to dismiss. That pleading and those motion papers were indeed signed by plaintiff's counsel. The oral statements in question were made during plaintiff's counsel's "advocating" of the sufficiency of the second amended complaint. Hence, Rule 11 is applicable.

Second, as a matter of common sense, Rule 11 ought to apply to "oral advocacy"—at least where an attorney is advocating a "pleading, written motion, or other paper" signed by the attorney. Counsel simply cannot be permitted to make allegations and other factual contentions at oral argument without evidentiary support or a good faith basis for believing that further investigation and discovery will result in evidentiary support. Courts rely on representations made to them by counsel, and if those representations turn out to be false and were made without a good faith basis, counsel must be held accountable.

Third, the concern of the Advisory Committee that counsel should not be sanctioned for making "statements that would not have been made if there had been more time for study and reflection" does not exist here, for plaintiff's counsel had an opportunity to study and reflect on the accuracy of the statements he made. As required by Rule 11, plaintiff's counsel was given an opportunity to withdraw or correct his statements prior to the filing of defendants' motion. Not only did he not withdraw or correct his statements, he re-affirmed them, taking the position in his sanctions motion papers that his statements were an "understatement." They were not. Indeed, they were a gross overstatement.

■ In making the two sets of statements in question, plaintiff's counsel violated Rule 11. The statements were materially misleading and were without evidentiary or other support. Although he had an opportunity to withdraw or correct the statements, plaintiff's counsel did not. Accordingly, he is hereby sanctioned $1,500, of which $750 is to be paid to the Clerk of the Court and $750 is to be paid to defendants.[18] He may not seek reimbursement for this amount from his client.

### CONCLUSION

If the facts as alleged by plaintiff are true, then it may well be that defendants have engaged in egregious and inappropriate conduct. Even assuming that is the case, however, the second amended complaint fails to state a claim upon which relief may be granted. Plaintiff's claim, for example, that he was defamed by comments made about him in counsel's opening statement at the trial of the Sequa Case is patently frivolous as a matter of law. If in fact counsel misrepresented anything to the Court in the Sequa Case, if in fact defendants litigated the Sequa Case in an inappropriate fashion, and if in

---

**18.** I have assessed a sanction of only $1,500 and I have directed that half of it be paid to the Clerk of the Court because defendants sought sanctions only with respect to statements made during oral argument. By that point, of course, the motion to dismiss had been fully briefed, and hence, with the exception of the time and effort required to file the Rule 11 motion, the statements in question did not require any additional effort by defendants.

fact the claims against plaintiff in the Sequa Case were frivolous, plaintiff's recourse was to seek sanctions from the Court in the Sequa Case, just as the parties sought sanctions in this case. The answer was not to commence another round of frivolous litigation, seeking $344,000,000 in damages.

Plaintiff's cross-motion for leave to file a second amended complaint is granted to the extent that the proposed second amended complaint is deemed filed as of the date the cross-motion was filed. Defendants' motion to dismiss, construed as a motion directed at the second amended complaint, is granted, and the second amended complaint is hereby dismissed. Since plaintiff has already filed three different complaints, the second amended complaint is dismissed with prejudice and leave to file a third amended complaint will not be granted. Defendant's motion for Rule 11 sanctions is granted, and plaintiff's counsel is sanctioned $1,500 as set forth above. Plaintiff's cross-motion for Rule 11 sanctions is denied.

SO ORDERED.