HARRY SACHS, Respondent, *v.* PHILIP WEINSTEIN and Another, Individually and as Copartners, Doing Business as CLASSIC SHOE COMPANY, and Others, Appellants.

First Department, March 7, 1924.

**Malicious prosecution — complaint alleging institution and prosecution of involuntary bankruptcy proceedings against plaintiff maliciously and without probable cause, and willful, reckless and wanton prosecution thereof states cause of action — complaint sufficient to permit recovery of exemplary damages.**

A cause of action is stated in a complaint which alleges, in effect, that the defendants instituted and prosecuted involuntary bankruptcy proceedings against the plaintiff without probable cause, and willfully, recklessly and wantonly prosecuted the same; that after a trial the petition in involuntary bankruptcy was dismissed and no appeal was taken from the judgment, and that on a false affidavit the defendant was charged with concealing his assets and was required to submit to an extended examination.

The institution of involuntary bankruptcy proceedings is, in effect, an impounding of the alleged bankrupt's property, and where it appears that such involuntary proceedings were instituted without probable cause and maliciously, an action will lie in favor of the alleged bankrupt against those instituting the proceedings for the damages suffered by him by reason thereof.

The allegations of the complaint are sufficient to permit the recovery of exemplary damages, since it is alleged in the complaint that the bankruptcy proceedings were prosecuted not only maliciously and without probable cause, but willfully, recklessly and wantonly.

SEPARATE APPEALS by the defendants, Philip Weinstein and another, individually, etc., and another, and by Meyer Marlow, from separate orders of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 23d day of May, 1923, denying separate motions made by the appealing defendants for orders dismissing the complaint for insufficiency, and to strike out certain allegations therein, or in the alternative to compel the plaintiff to state and number them as separate causes of action, and also to strike out certain other paragraphs of the complaint upon the ground that the statements therein contained were conclusions of law.

*Samuel W. Fisher* [*Simon M. Sapinsky* of counsel; *Paul L. Ross* with him on the brief], for the appellants.

*Remington & Meek* [*Harold Remington* of counsel; *Basil H. Pollitt* with him on the brief] for the respondent.

MERRELL, J.:

The action is to recover damages alleged to have been sustained by the plaintiff by reason of the malicious prosecution by the defendants through a conspiracy entered into by them by the institution of involuntary bankruptcy proceedings against the plaintiff, which proceedings the plaintiff alleges were begun maliciously and without probable cause.

In his complaint the plaintiff alleges, *first*, that during all the times mentioned in the complaint he was a retail dealer in boots, shoes and rubbers, having a place of business, a retail store, at 828 Manhattan avenue, Greenpoint, borough of Brooklyn, New York city. Upon information and belief the plaintiff alleges that the defendants Weinstein and Martin were copartners in the business of manufacturing and selling boots and shoes, trading under the firm name and style of Classic Shoe Company, and upon information and belief that at all the times mentioned in the complaint the defendant Meyer Marlow was an attorney at law acting for said defendants, individually and as copartners doing business as Classic Shoe Company, and upon information and belief that the defendant Evelyn Clotzman was a stenographer in said attorney's office and was without financial responsibility; that the said Classic Shoe Company was on and before the 13th day of October, 1922, a creditor of plaintiff in the sum of $659.

Plaintiff further alleges in his complaint on information and belief that on or about the 13th day of October, 1922, at some place unknown to the plaintiff, defendants conspired together and formed the design and purpose, maliciously and without probable cause, to file an involuntary petition in bankruptcy against

plaintiff and to charge plaintiff thereby with being a bankrupt and with having insufficient assets even at fair valuation to equal in amount his liabilities, and thus, among other things, to extort from plaintiff payment of said debt of approximately $650, and to injure plaintiff in his credit and business reputation as a retail dealer in boots and shoes in the community where he was doing business and in the wholesale trade from whom he was purchasing goods on credit; that the different acts and things done by the defendants, any one or more of them, as alleged in the complaint, were all steps in said design and purpose in which all of said defendants participated, and were all done in the carrying out of their conspiracy aforesaid; that in furtherance of said conspiracy, on or prior to the said 13th day of October, 1922, defendants caused said defendants Weinstein and Martin and the Classic Shoe Company to make a pretended assignment and transfer of said debt to said defendant Evelyn Clotzman, stenographer as aforesaid of said defendant attorney Meyer Marlow, and caused said defendant stenographer to become a pretended owner thereof for the purpose of enabling them in the guise of said defendant Evelyn Clotzman as petitioning creditor to file said involuntary petition in bankruptcy against the plaintiff and to prosecute said conspiracy under the guise, pretense and name of an irresponsible person and with the hope of protecting said other defendants from the consequences of their acts in prosecuting the same maliciously and without probable cause; that on or about said 13th day of October, 1922, in the name of said defendant stenographer, the defendants maliciously and without probable cause filed an involuntary petition in bankruptcy against the plaintiff in the United States District Court for the Eastern District of New York, in the district where plaintiff was doing business, and therein and thereby alleged in effect that plaintiff was insolvent and had not sufficient assets even at fair valuation to pay his liabilities, and had committed acts of bankruptcy, which acts of bankruptcy were alleged in general terms; that the plaintiff, by virtue of defendants' said filing of their said involuntary petition in bankruptcy herein, was obliged to appear by attorney and defend himself against said charge of being a bankrupt; that the issues thus raised were tried by the United States District Court for the Eastern District of New York and a jury, and after several days' trial a verdict was, upon the 27th day of February, 1923, duly rendered by said jury in favor of the plaintiff herein, upon which verdict, after the expiration of a stay obtained by defendants judgment was thereafter, to wit, on the 21st day of March, 1923, duly rendered dismissing said petition in involuntary bankruptcy,

and from which judgment no appeal was taken, and that the time for appeal has expired; that in the course of said proceedings the defendants procured a false affidavit of said pretended petitioner, Evelyn Clotzman, to be made alleging on information and belief in substance that plaintiff was indebted in the sum of $15,000 and had assets of only $5,000, and implying the existence of concealed assets and the necessity for said examination in order to discover their whereabouts, and that defendants, on the strength of said false affidavit, procured the granting of an order of court obliging plaintiff, under penalty of imprisonment for contempt for its disobedience, to leave his usual and desired and gainful occupations and to attend before a special commissioner and there be subjected to examination from time to time, and thereby restrained plaintiff in his liberty, to his great loss, humiliation and injury.

The plaintiff further alleges in his complaint that the filing of said petition in involuntary bankruptcy and the maintenance thereof during the five and one-half months of time the same was pending before entry of said judgment of dismissal, operated in effect as a warning, attachment and injunction against plaintiff and all persons attempting to deal with him in relation to his business and property and operated in effect as a sequestration of plaintiff's property in plaintiff's hands as *quasi* trustee and prevented in effect wholesalers from selling plaintiff goods upon credit to replenish his stock and drove away customers and those who otherwise would have dealt with him and otherwise interfered with, depleted and in great part ruined plaintiff's business and thereby injured him in his property and estate; that by reason of the filing and maintenance of the said petition in involuntary bankruptcy plaintiff was put to great trouble, inconvenience and expense in defending himself against said charge of being a bankrupt, in preparing for said trial, in procuring witnesses, in employing counsel, and that plaintiff otherwise and necessarily incurred therefor an expense of $482.50 for witnesses and a reasonable attorney's fee in the sum of $1,100; that by reason of the filing and maintenance of said involuntary bankruptcy petition, the plaintiff furthermore was unable properly to attend to his business as retail dealer in boots, shoes and rubbers and was obliged to. neglect the same during nearly five months of a most important selling season and thereby lost valuable trade, with interest from the 13th day of October, 1922, to the great loss, detriment and damage of his said business in the sum of $5,000; that by reason of the filing and maintenance of the said petition in involuntary bankruptcy, so as aforesaid maliciously and without probable cause brought against the plaintiff herein, the plaintiff has suffered

and still is suffering great injury to his reputation and credit as a retail dealer in boots and shoes both among customers to whom he would sell and among wholesale dealers from whom he would buy on credit, and others who have thereby been rendered skeptical of his financial responsibility and dubious about giving him usual and advantageous prices and terms of credit to his further damage in the sum of $5,000.

Plaintiff finally alleges in his complaint that said bankruptcy proceedings against him were prosecuted by the defendants not only maliciously and without probable cause, but willfully, recklessly and wantonly, as stated in the complaint, whereby plaintiff suffered further and exemplary damages in the sum of $5,000, with interest from said 13th day of October, 1922.

Upon such allegations the plaintiff prayed judgment in his complaint against the defendants in the sum of $16,582.50, with interest from the 13th day of October, 1922, besides the costs and disbursements of the action.

By the motions of the defendants to dismiss said complaint for insufficiency, they admit the truth of all of the allegations contained in said complaint, including the allegations of conspiracy, the institution and prosecution of said involuntary bankruptcy proceedings maliciously and without probable cause, and that the same were willfully, recklessly and wantonly prosecuted by the said defendants.

Upon this appeal the appellants contend, as they did upon the motions at Special Term, that a cause of action will not lie to recover damages for malicious prosecution of said bankruptcy proceedings. The appellants rely upon the rule now fairly well established in this State that an action will not lie to recover damages for malicious prosecution without probable cause of a civil action. It is the contention of the appellants, and the courts have practically held, that a party against whom a civil action is brought which is unsuccessful and which indeed may have been brought maliciously and without probable cause, is compensated upon failure of the action against him by the costs rendered in his favor therein against the parties who are severally prosecuting him. Prior to the enactment of the statutes providing for costs against an unsuccessful plaintiff in a civil suit the rule in this State seems to have been that an action on the case would lie to recover damages against the party willfully and maliciously prosecuting such civil action without probable cause. (*Vanduzor* v. *Linderman*, 10 Johns. 106; *Smith* v. *Smith*, 56 How. Pr. 316; *Pangburn* v. *Bull*, 1 Wend. 345.) In many of the States of the Union an aggrieved defendant may still bring an action to recover damages for malicious prosecution

of a civil action. In *Smith* v. *Smith* (*supra*) it was held, following the Vermont rule, that the principle of the common law recognized by the English courts before the statutes allowing costs to defendants, and which gave a remedy for injuries sustained by reason of suits which were malicious and without probable cause, is and ought to be operative still and to afford a remedy in all such cases where the taxation of costs is not an adequate compensation for the damages sustained, and where the damages sustained by a defendant, in defending a suit maliciously brought without reasonable and probable cause, exceed the costs obtained by him he has and of right should have a remedy by action on the case. In *Smith* v. *Smith* it was held that an action might be maintained for filing a notice of *lis pendens* whereby the plaintiff was prevented from selling his property.

I think, however, that in this State the weight of authority at the present time is to the effect that in an ordinary civil action where the person or property of a defendant is not interfered with, as by injunction, attachment, arrest or some other provisional remedy, the defendant, although successful is not entitled to maintain an action for malicious prosecution against the plaintiff, notwithstanding such action may have been prosecuted without probable cause and maliciously, and resulted in damage to the defendant in excess of the costs recovered by him. (*Paul* v. *Fargo*, 84 App. Div. 9.)

This rule, however, does not apply where an injunction or attachment has been issued or where there has been an order of arrest or some other provisional remedy given or where there has been some interference with the person or property of the defendant in connection with the bringing of the civil action. The appellants insist that the institution of the involuntary bankruptcy proceeding is civil in its nature and that said proceedings are no more than or different from the bringing of a civil action. In such contention I think the appellants are clearly in error. While the question does not seem to have been passed upon by any adjudicated case in the State of New York, the decisions of sister States are cited by the respondent as directly sustaining the present action, and text writers seem to agree that the institution of an involuntary bankruptcy proceeding is in effect an impounding of the alleged bankrupt's property, and where it appears that such involuntary proceedings were instituted without probable cause and maliciously, that an action will lie in favor of the alleged bankrupt against those instituting the proceeding for the damages suffered by him by reason thereof. It will be noted that in the language of the opinion in *Paul* v. *Fargo* those responsible for the bringing

of a civil action are only relieved in the case of " an ordinary civil action, where the person or property of the defendant is not interfered with," and in *Willard* v. *Holmes, Booth & Haydens* (142 N. Y. 492) Judge GRAY, writing for the Court of Appeals, says: " But I am prepared to assume that there may be satisfactory authority for holding that where a party has been subjected to some special, or added, grievance, as by an interference with his person, or property, in a civil action, brought without probable cause, he may maintain a subsequent action to recover any legal damage, which he avers, and is able to show, to have been occasioned to him."

And in *Burt* v. *Smith* (181 N. Y. 1) Judge VANN said (at p. 5): " Damages are rarely recovered, however, for the malicious prosecution of a civil action, *unless person or property is interfered with by some incidental remedy, such as arrest, attachment or injunction.*" (Italics are the writer's.)

The plaintiff, respondent, contends, with reason, that the filing of the petition and the institution of the involuntary proceeding maliciously and without probable cause, recklessly and wantonly, as admitted by the motion of the defendants, was an interference with the property of the plaintiff within the Court of Appeals authorities above mentioned.

In *Norin* v. *Scheldt Mfg. Co.* (297 Ill. 521; 130 N. E. Rep. 791, affg. 219 Ill. App. 484) the court held that an action for malicious prosecution would lie in a case where without probable cause a petition in involuntary bankruptcy had been filed against the plaintiff, with malice on the part of the defendant. The authorities are collated in *Norin* v. *Scheldt Mfg. Co.* (*supra*), and it was therein distinctly held that such an action would lie because under an adjudication in bankruptcy all of the property of the debtor becomes subject to the control of the court and the defendant in such a proceeding is without power to dispose of his property or to engage in business in any way. The Supreme Court of the United States in *Mueller* v. *Nugent* (184 U. S. 1) held that " the filing of the petition [in bankruptcy] is a *caveat* to all the world, and in effect an attachment and injunction." The opinion in *Norin* v. *Scheldt Mfg. Co.* contains the following pertinent statement: " A petition in bankruptcy is *sui generis* and is most far-reaching and drastic in its effects. Whether the property of the bankrupt be actually seized or not, no prudent person will buy from him or sell anything to him on credit, because all transactions between the bankrupt and third persons after the petition in bankruptcy has been filed are liable to be investigated, reviewed, set aside or controlled should there be an adjudication of bankruptcy. In *Wilkinson* v. *Goodfellow-*

*Brooks Shoe Co.*, 141 Fed. 218, decided by the United States Circuit Court of Appeals, a bankruptcy proceeding is held not to be an ordinary civil suit.   The effect of filing a petition for adjudication as a bankrupt has been described in *Bank* v. *Sherman*, 101 U. S. 403, as a proceeding whereby all the property rights of the debtor after the filing of the petition are practically in abeyance until final adjudication, and those who deal with his property in the interval do so at their peril.   In *Stewart* v. *Sonneborn*, 98 U. S. 187, the power to throw a man into bankruptcy is referred to as one of great magnitude to be given to one man over another. In the case of *In re Moehs & Rechnitzer* (D. C.) 174 Fed. 165, it was held that though there is no liability for filing a petition in bankruptcy except for usual costs, yet when the petitioners have acted maliciously and without probable cause the remedy is a suit in the nature of a suit for malicious prosecution.   (This case was decided by Judge HOLT sitting in the United States District Court for the Southern District of New York.)   To the same effect is *In re J. Ito Terusaki* (D. C.) 238 Fed. 934.   In Cooley on Torts, vol. 1 (3d Ed.) p. 345 it is said:

" ' In some cases an action may be maintained for malicious institution of a civil suit, but the authorities are not entirely agreed what cases are embraced within the rule.   The case of the malicious institution of proceedings in bankruptcy is undoubtedly one. If these are instituted maliciously, and without probable cause, and terminate without an adjudication of bankruptcy, an action will lie for the damages sustained.' "

Cooley on Torts (Vol. 1 [3d ed.] p. 346) further quotes as follows: " The general grounds of this action are, that the commission was falsely and maliciously sued out, that the plaintiff has been greatly damaged thereby, scandalized upon record, and put to great charges in obtaining a *supersedeas* to the commission: here is falsehood and malice in the defendant, and great wrong done to the plaintiff thereby.   Now, wherever there is an injury done to a man's property by a false and malicious prosecution, it is most reasonable he should have an action to repair himself."   In Sutherland on Damages (Vol. 4 [4th ed.], § 1235), it is said:   " In many cases the injury to reputation is the most serious consequence of the wrong.   An accusation made under the forms of law, on the pretense of bringing a guilty man to justice, is made in the most imposing and impressive manner and may inflict a deeper injury upon the reputation of the party accused than the same words would uttered under any other circumstances.   This wrong, however, does not consist entirely in the malicious prosecution of groundless criminal proceedings, though the element of defamation

is mostly confined to them. The malicious prosecution, without probable cause, of civil proceedings involving arrest, attachment, sequestration or other interference with person or property, or which is the cause of any special grievance or injury, will, according to the general current of authority, give a right of action. The same has been held of proceedings to have a person declared insane or bankrupt without probable cause, and in cases of malicious abuse of legal process."

In *King* v. *Sullivan & Co.* (92 S. W. Rep. [Tex. Civ. App.] 51) it was said: " It seems to be the well-established rule in this State, as well as in a good many other jurisdictions, that no damages can be recovered of any character against any person for filing a civil suit and prosecuting it against another to judgment upon a claim, real, or unfounded, unless one's property or person is wrongfully seized, or in some manner injuriously affected, by process issued therein. [Citing authorities.] In jurisdictions where this rule obtains, the obverse rule is that the malicious prosecution, without probable cause, of civil proceedings involving arrest, attachment, sequestration, or other interference with person or property, or which is the cause of any special grievance or injury, will, according to the general current of authority, give a right of action. [Citing authorities.] And the writer, after an extended examination of the authorities, can find no exception to the principle that the malicious institution of proceedings, without probable cause, to have a person declared a bankrupt falls within the rule last quoted. Suth. on Dam. § 1235; Cooley on Torts (2d ed.). 217, p. 182; Webb's Pollock on Torts, 400; Jaggard on Torts, 606, Fraser, Torts, 121; Stephens on Malicious Prosecution, pp. 23, 24; *Sonneborn* v. *A. T. Stewart & Co.*, 2 Woods, 602, Fed. Cas. No. 13,176; Id. 98 U. S. 187; *Luby* v. *Bennett*, 111 Wis. 613, and authorities cited under the proposition in elementary authorities referred to.

" It will be seen from reading our citation from Fraser on Torts that in England ' malicious prosecution ' has been defined as ' the malicious institution against another of criminal, bankruptcy or liquidation proceedings, without reasonable and probable cause.' And that Judge Cooley, in considering the class of cases in which an action may be maintained for malicious institution of a civil suit, after observing that the authorities are not entirely agreed upon such cases, says: ' The case of proceedings in bankruptcy is undoubtedly one. If these are instituted maliciously, and without probable cause, and terminate without an adjudication of bankruptcy, an action will lie for the damages sustained. The grounds of this action are that the commission was falsely and maliciously sued out, that the plaintiff has been greatly damaged

thereby, scandalized upon the record, and put to great charges in obtaining a *supersedeas* to the commission. Here is falsehood and malice in the defendant, and great wrong done the plaintiff thereby.'" (See, also, *Wilkinson* v. *Goodfellow-Brooks Shoe Co.*, 141 Fed. Rep. 218.)

In the latter case the court said: "In my opinion, a bankruptcy proceeding cannot be said to be an ordinary civil suit. It is *sui generis*, and it is far reaching and drastic in its effects. Whether accompanied by actual seizure of bankrupt's property or not, it places an embargo on his right to dispose of his property and of his business generally. No prudent person will buy from him, and no prudent person will sell anything to him on credit, even if security is offered, because all transactions between the bankrupt and third persons after the petition in bankruptcy has been filed are liable to be investigated, reviewed, set aside, or controlled as to their validity and effect in case of an adjudication. As the Supreme Court expressed it in *Mueller* v. *Nugent*, 184 U. S. 1, 14:

"'The filing of the petition is a *caveat* to all the world, and in effect an attachment and injunction.' * * *

"For the purpose of this demurrer the court will also take judicial notice of the fact that the filing of a petition in bankruptcy is not only published in the daily press, but is usually, if not invariably, reported by the commercial agencies which rate the financial standing of business men. The effect of all this is apparent. The alleged bankrupt's credit is impaired, if not destroyed, and his business paralyzed. Now, all this may be *damnum absque injuria*, if the petitioning creditors have instituted the proceedings in good faith, though wrongfully; but if a proceeding with such injurious effects is instituted without probable cause, and with a malicious intent to injure the party proceeded against there ought to be a remedy for the injury inflicted. * * *

"It is an elementary principle of the common law that a wrongful act causing injury entitles the injured party to compensation [citing authorities], and I cannot see any reason why a person who institutes a bankruptcy proceeding in bad faith, and for the purpose of inflicting injury, should be exempt from this rule. My decision therefore is that the institution and prosecution of a proceeding in bankruptcy without probable cause and with a malicious intent, may be good ground for an action of malicious prosecution, although the proceeding in bankruptcy was not accompanied by any seizure of the alleged bankrupt's property."

There cannot be the slightest question that by the filing of the petition in bankruptcy the United States authorities assumed,

for the time being, control and supervision over the property of the alleged bankrupt. He could no longer, and while said proceeding was pending undetermined, dispose of the same. It, in effect, acted as an attachment and tied up his property and placed it beyond his control. This shows the line of demarcation between such a proceeding and the ordinary civil action.

The respondent draws an analogy between the institution of involuntary bankruptcy proceedings and the institution of lunacy proceedings. In either case the property of the unfortunate is taken into possession by the court, and pending the proceedings he has no control over it.

I think the allegations of the complaint are sufficient to permit the recovery of exemplary damages in this case. As a pleading, I think the complaint states facts sufficient to constitute a cause of action, and that the motions of the defendants were properly denied. The claim that two causes of action are set forth in the 12th paragraph of the complaint is frivolous. The 12th paragraph of the complaint merely alleges evidentiary facts upon which the plaintiff may base his claim for damages.

The orders appealed from should be affirmed, with ten dollars costs, with leave to the defendant to answer on payment of said costs and ten dollars costs of motion at Special Term.

CLARKE, P. J., DOWLING, SMITH and McAVOY, JJ., concur.

On each appeal: Order affirmed, with ten dollars costs and disbursements, with leave to defendant to answer within twenty days from service of order upon payment of said costs and ten dollars costs of motion at Special Term.