**David J. O'BRIEN, Plaintiff–Appellant,**

**v.**

**Norman E. ALEXANDER; Stuart Z. Krinsly; Gerald S. Gutterman; John J. Quicke; Ellen T. Harmon; Schulte Roth & Zabel; David Brodsky; Chaye Zuckerman Shapot; Sequa Corporation; Sequa Capital Corporation; John Does 1–5, Defendants–Appellees.**

No. 1504, Docket 95–7976.

United States Court of Appeals, Second Circuit.

Argued May 13, 1996.

Decided Dec. 12, 1996.

Charles B. Manuel, Jr., New York City, for Plaintiff-Appellant.

Jonathan Taylor, New York City (David M. Brodsky, Brooks R. Burdette, Schulte Roth & Zabel, New York City, of counsel), for Defendants–Appellees.

Before: MESKILL, CARDAMONE, and MINER Circuit Judges.

CARDAMONE, Circuit Judge:

After two corporations voluntarily withdrew and dismissed their suit for fraud and racketeering against plaintiff, he sued them under ten different tort theories seeking damages of $346 million. The district court dismissed plaintiff's complaint for failure to state a cause of action and sanctioned plaintiff's counsel under Rule 11 for statements he made in oral argument. Because none of the tort theories states a claim, we affirm dismissal of plaintiff's complaint.

Our review of the sanctions imposed is a more difficult and delicate task. A lawyer fighting for his client's rights in a courtroom is expected to be as wily and resourceful as Daniel Webster was in his defense of Jabez Stone in the foreclosure action brought against him by the Devil, to whom Stone had sold his soul. Stephen Vincent Benét, *The*

*Devil and Daniel Webster, reprinted in Law in Action: An Anthology of the Law in Literature* 139 (Crown Publishers 1947). Counsel must be able to think and argue on his or her feet in a courtroom, a forum where conditions change rapidly. Yet zealous oral advocacy must be conducted according to the rules and counsel may not "knowingly make a false statement of law or fact," Model Code of Professional Responsibility DR 7–102(A.5). To violate this professional standard may result in sanctions under Rule 11. Such sanctions were imposed for two oral statements made by counsel. In our view, one violated Rule 11, the other did not.

Accordingly, on this appeal from an August 31, 1995 judgment of the United States District Court for the Southern District of New York (Chin, J.) dismissing plaintiff David J. O'Brien's second amended complaint for failure to state a cause of action and imposing sanctions against plaintiff's attorney under Fed.R.Civ.P. 11, we affirm in part, reverse in part, and remand to the district court for a reconsideration of the amount of sanctions.

## BACKGROUND

### A. *O'Brien's Termination*

O'Brien was employed by defendant Sequa Corporation for 18 years from 1973 to 1991. In 1986, according to his second amended complaint, he founded and later became president of a wholly-owned subsidiary of Sequa, Sequa Capital Corporation, which provided a variety of financial services. Although Sequa Capital's revenue grew substantially from 1986 through the end of 1990, defendant Gerald S. Gutterman told O'Brien in January 1991 that he was being terminated immediately. No reason was given. A Sequa attorney told O'Brien he would receive a severance package, and that Sequa would pay for a lawyer to help him review its terms.

A month later, in February 1991, O'Brien met with defendants Norman E. Alexander, Stuart Z. Krinsly, Ellen T. Harmon and Gutterman—Sequa's chairperson, general counsel, associate general counsel and chief financial officer respectively. O'Brien, who was not represented by counsel, objected to the presence of Sequa's attorneys, whereupon Alexander agreed to act as his counsel. O'Brien then answered a series of questions and supplied information that was later used in a lawsuit against him and Jeffrey Gelmin, the president of a consulting company called GBJ Corporation.

### B. *The* Sequa *Litigation*

O'Brien further alleges that in October 1991 he met with Krinsly and defendant Chaye Zuckerman Shapot, a partner at the law firm of Schulte Roth & Zabel, to discuss plaintiff's dealings with Gelmin. At this meeting, Krinsly attempted to induce plaintiff to agree to testify falsely in the impending litigation between GBJ Corporation and Sequa. When GBJ Corporation subsequently brought an action against Sequa in the Southern District of New York, *Gelmin v. Sequa Corp.*, 91 Civ. No. 8675 before Judge Haight, seeking to recover for alleged violations of federal securities law and to collect unpaid fees, Shapot continued to seek testimony from O'Brien favorable to his client, and attempted to persuade O'Brien to so testify with the promise of a release from liability and severance benefits from Sequa.

O'Brien was later deposed in the *Sequa* litigation, and Sequa's counsel told O'Brien his testimony was not useful to Sequa. In August 1992 Sequa joined O'Brien as a party defendant in the litigation, claiming that he conspired with Gelmin to defraud and embezzle money from Sequa, his former employer. O'Brien asserts that these accusations are groundless and that his accusers, the principal officers of Sequa, ignored documentary evidence proving that he had not acted improperly.

Meanwhile, plaintiff contends, Shapot, Harmon, Alexander, and Krinsly, together with defendants John J. Quicke (Sequa's president) and David Brodsky (another Schulte Roth & Zabel partner), used trickery and intimidation to convince Sequa Capital employee Edward Piszko to sign false and misleading affidavits implicating O'Brien and Gelmin in wrongdoing. These affidavits were used in the *Sequa* case and to support an insurance claim filed by Sequa to cover losses stemming from employee dishonesty.

O'Brien alleges that these and other false statements were repeated to various third parties, including Sequa's accountants and a subsequent employer, and that he has suffered great financial harm as a result, pushing him to the brink of bankruptcy.

Proceeding as a *pro se* defendant in the *Sequa* litigation, O'Brien made a motion in mid–1993 seeking various types of relief. Sequa and Sequa Capital were now realigned as plaintiffs and O'Brien as defendant. O'Brien sought dismissal of Sequa's complaint for want of personal jurisdiction, for improper venue, and for failure to state a claim or, in the alternative, he sought transfer to another venue. He also requested an order requiring Sequa to advance his litigation costs and expenses. In a ruling dated July 19, 1993, Judge Haight summarily refused to dismiss or transfer the action, noting that Sequa's complaint adequately charges O'Brien with personal participation in the underlying RICO fraud under 18 U.S.C. § 1964 and that RICO provides for nationwide service of process. But, relying on N.Y. Bus. Corp. Law § 724(c), which authorizes a court to require advances from a corporate litigant to a former officer or director if it finds the defendant has raised genuine issues either of fact or law, Judge Haight ordered Sequa to pay O'Brien's reasonable litigation expenses, including attorneys' fees. Four days after that ruling Sequa and Sequa Capital filed a notice of dismissal under Fed.R.Civ.P. 41(a)(1)(i), voluntarily withdrawing their action, without prejudice, insofar as it asserted claims against O'Brien.

### C. *The Present Proceedings*

In 1994, O'Brien instituted the instant action as plaintiff against Sequa; Sequa Capital; Sequa officers Alexander, Krinsly, Gutterman, and Harmon; Schulte Roth & Zabel and partners Brodsky and Shapot; and five "John Doe" defendants. This action came before district court Judge Denny Chin. Plaintiff's second amended complaint alleges that the defendants, in various combinations, committed the following wrongs against him: malicious prosecution, abuse of process, deception in violation of N.Y. Jud. Law § 487 with respect to the February 1991 meeting and a separate violation of § 487 with respect to procuring an affidavit from Piszko, defamation, injurious falsehood, negligence, *prima facie* tort, general tort, and tortious interference with contract by the unnamed parties. This complaint was dismissed by Judge Chin who ruled that none of the ten tort theories stated a cause of action. *O'Brien v. Alexander*, 898 F.Supp. 162, 176 (S.D.N.Y.1995).

Both parties moved for sanctions under Fed.R.Civ.P. 11. O'Brien's motion was denied. *O'Brien*, 898 F.Supp. at 177. Defendants' motion was granted and plaintiff's attorney was sanctioned in the amount of $1,500, $750 to be paid to the Clerk of Court and $750 to be paid to the defendants. *Id.* at 176. The sanction was based upon two sets of statements made by O'Brien's lawyer during oral argument of the defendants' motion to dismiss the complaint. The first statement dealt with the circumstances in which the *Sequa* litigation was terminated, a matter relevant to plaintiff's malicious prosecution claim. Plaintiff's attorney argued as follows: "The fact is that at that time it had become absolutely clear that nothing against Mr. O'Brien had been proved. Indeed, nothing had been properly pleaded from the outset." These words, Judge Chin found, were directly contradicted by Judge Haight's ruling in the *Sequa* litigation that Sequa's complaint adequately charged O'Brien with participation in the alleged fraud. *O'Brien*, 898 F.Supp. at 175. Judge Chin also noted Judge Haight had dismissed O'Brien's motion to dismiss the complaint in that action.

The second sanctioned statement addressed O'Brien's abuse of process claim. In reciting examples of the alleged improper use of subpoenas in the *Sequa* case, O'Brien's counsel told the court

Before Mr. O'Brien was served with the second round of subpoenas, one of Mr. Brodsky's colleagues at Schulte, Roth & Zabel telephoned Mr. O'Brien's employer between eight and ten times over a span of two days, informing him that the judge had ordered him to appear for further testimony in the case. Messages were left at the office there....

That was not required. That was done to leave a very sour taste with Mr. O'Brien's employer regarding what he was up to and the fact that he was still involved, seemingly, as a party-like participant in the [*Sequa*] litigation.

The district court took issue with counsel's reference to O'Brien's "employer," finding that the phone calls—as described in plaintiff's affidavit—were in fact "to an office that plaintiff was apparently using at his former *attorney's* office." *O'Brien*, 898 F.Supp. at 175. Thus, the district court thought the statement substantially misrepresented the actual facts.

O'Brien's counsel urged before the district court that Rule 11 sanctions were inappropriate because the oral statements to the court were not pleadings, written motions, or other papers within the meaning of Rule 11. In rejecting this argument, Judge Chin reasoned first that Rule 11, as amended in 1993, defines "presenting" as "signing, filing, submitting or later advocating" a paper. Because counsel was reaffirming representations found in the complaint, the trial court believed he was advocating the complaint for purposes of Rule 11(b). Second, the district court ruled that as a matter of common sense, Rule 11 applies to "oral advocacy," and counsel must be accountable—at least where an attorney is advocating a " 'pleading, written motion, or other paper' signed by the attorney"—because courts rely on counsel's oral representations. *Id.* at 176.

The district court also observed that O'Brien's attorney was given a chance to withdraw or correct these statements before the filing of defendants' sanctions motion, but chose to reaffirm the statements, calling them an "understatement." *Id.* at 176. Finding the statements a "gross overstatement" the district court held them violative of Rule 11. *Id.* Plaintiff now appeals the dismissal of each of his tort causes of action, and his attorney urges that we overturn the order imposing Rule 11 sanctions against him.

## ANALYSIS

### I Dismissal of the Complaint

Whether the district court properly dismissed O'Brien's complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is reviewed *de novo*. In conducting that review we must of course accept as true the factual allegations contained in the complaint, and affirm the dismissal only when—drawing all permissible inferences in plaintiff's favor—it appears that plaintiff "can prove no set of facts" that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Because this is a diversity action it is our task to ascertain what the law of New York is and apply it. *Salve Regina College v. Russell*, 499 U.S. 225, 231–34, 111 S.Ct. 1217, 1220–23, 113 L.Ed.2d 190 (1991); *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183–84, 85 L.Ed. 139 (1940).

### A. *Malicious Prosecution*

The only one of the ten tort causes of action dismissed by the district court that warrants discussion is the one alleging that the defendants, relying upon false statements and accusations and attempting to malign O'Brien, maliciously prosecuted the *Sequa* case against him. A cause of action for malicious prosecution in New York has four elements: (1) the initiation of an action by the defendant against the plaintiff, (2) begun with malice, (3) without probable cause to believe it can succeed, (4) that ends in failure or, in other words, terminates in favor of the plaintiff. *Broughton v. State of New York*, 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 335 N.E.2d 310, *cert. denied*, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975). Such a cause of action may be based upon a civil action instituted against plaintiff provided there is a showing of some interference with plaintiff's person or property, *Williams v. Williams*, 23 N.Y.2d 592, 596 n. 2, 298 N.Y.S.2d 473, 246 N.E.2d 333 (1969), by the use of such provisional remedies as arrest, attachment, replevin or injunction, *Belsky v. Lowenthal*, 62 A.D.2d 319, 321, 405 N.Y.S.2d 62 (1st Dep't 1978), *aff'd*, 47 N.Y.2d 820, 418 N.Y.S.2d 573, 392 N.E.2d 560 (1979) (mem.), or other burden imposed on plaintiff beyond the ordinary burden of defending a law suit, *see* W. Page Keeton *et al.*, *Prosser and Kee-*

*ton on the Law of Torts* § 120, at 90 (5th ed. 1984).

The trial court dismissed O'Brien's malicious prosecution claim on two alternative grounds. First, it reasoned that O'Brien's failure to allege that a provisional remedy was issued against him in the *Sequa* litigation doomed this cause of action to dismissal. *O'Brien,* 898 F.Supp. at 166. Second, it held that the voluntary dismissal under Fed. R.Civ.P. 41(a)(1)(i) did not constitute a termination in O'Brien's favor. *Id.* at 167. Thus, Judge Chin found that two of the necessary elements of a malicious prosecution claim were absent. Although we reach the same conclusion as the district court, our rationale is slightly different.

### 1. *Interference with Plaintiff's Person or Property*

We turn first to the issue of whether recovery for malicious prosecution in New York depends upon the plaintiff's ability to show that a provisional remedy, issued in the underlying litigation, interfered with plaintiff's person or property. O'Brien does not contend that Sequa and Sequa Capital obtained a provisional remedy or imposed any other burden on him beyond the ordinary. He asserts instead that the damaging consequences resulting from the *Sequa* litigation are themselves sufficient to make out a *prima facie* case of malicious prosecution.

■ We begin by noting that New York courts have repeatedly stated that interference from a provisional remedy is a prerequisite to a malicious prosecution claim where the action upon which that claim is founded is a civil action. *See, e.g., Sachs v. Weinstein,* 208 A.D. 360, 203 N.Y.S. 449, 453 (1st Dep't 1924) (no claim lies "in an ordinary civil action, where the person or property of a defendant is not interfered with, as by injunction, attachment, arrest, or some other provisional remedy"). This extraordinary burden requirement has been repeatedly applied in New York. *See, e.g., Venezia v. Sirulnick,* 213 A.D.2d 629, 630, 624 N.Y.S.2d 62 (2d Dep't 1995); *Otiniano v. Magier,* 181 A.D.2d 438, 439, 580 N.Y.S.2d 759 (1st Dep't 1992); *Moore v. Fulton Hous. Auth.,* 116 A.D.2d 993, 994, 498 N.Y.S.2d 713 (4th Dep't 1986); *see also Felske v. Bernstein,* 173 A.D.2d 677, 678, 570 N.Y.S.2d 331 (2d Dep't 1991); *Berman v. Silver, Forrester & Schisano,* 156 A.D.2d 624, 625, 549 N.Y.S.2d 125 (2d Dep't 1989); *Grattan v. Grattan,* 136 A.D.2d 597, 598, 523 N.Y.S.2d 582 (2d Dep't 1988); *Sokol v. Sofokles,* 136 A.D.2d 535, 536, 523 N.Y.S.2d 155 (2d Dep't 1988); *Brand Mfg. Corp. v. Olit Assocs.,* 132 A.D.2d 684, 685, 518 N.Y.S.2d 161 (2d Dep't 1987); *Vevaina v. Paccione,* 125 A.D.2d 392, 393, 509 N.Y.S.2d 113 (2d Dep't 1986), *appeal denied,* 69 N.Y.2d 607, 514 N.Y.S.2d 1025, 507 N.E.2d 321 (1987); *Molinoff v. Sassower,* 99 A.D.2d 528, 529, 471 N.Y.S.2d 312 (2d Dep't 1984); *Ellman v. McCarty,* 70 A.D.2d 150, 155, 420 N.Y.S.2d 237 (2d Dep't 1979); *Lincoln First Bank v. Siegel,* 60 A.D.2d 270, 280–81, 400 N.Y.S.2d 627 (4th Dep't 1977); *Muller v. Star Supermarkets, Inc.,* 49 A.D.2d 696, 696, 370 N.Y.S.2d 768 (4th Dep't 1975); *Chappelle v. Gross,* 26 A.D.2d 340, 341–43, 274 N.Y.S.2d 555 (1st Dep't 1966); *Metromedia, Inc. v. Mandel,* 21 A.D.2d 219, 223, 249 N.Y.S.2d 806 (1st Dep't), *aff'd,* 15 N.Y.2d 616, 255 N.Y.S.2d 660, 203 N.E.2d 914 (1964) (mem.).

■ In determining what is state law, we are not obliged to limit our inquiry to the decisions of the state's highest court. *West,* 311 U.S. at 237, 61 S.Ct. at 183–84. Hence, the cited cases—though they do not include New York's Court of Appeals—are persuasive evidence of New York law on this subject, absent any indication that the state's highest court disagrees.

The only appellate case O'Brien cites is *Groat v. Town Bd. of Glenville,* 73 A.D.2d 426, 426 N.Y.S.2d 339 (3d Dep't), *appeal dismissed,* 50 N.Y.2d 928 (1980). There a police chief had charged the plaintiff police officer with various counts of misconduct. Following acquittal on most of the charges, the plaintiff officer sued the town for malicious prosecution. The Third Department rejected the defendants' contention that plaintiff "ha[d] not alleged the obtaining of a provisional remedy or other interference with his person or property sufficient to support an action." *Id.* at 429–30, 426 N.Y.S.2d 339. It reasoned that plaintiff had been suspended without pay, dismissed from the police force,

and temporarily disgraced as a result of the prosecution. *Id.* at 430, 426 N.Y.S.2d 339.

■ Unlike O'Brien, the plaintiff in *Groat* was quite clearly subjected to burdens beyond the ordinary that interfered with his person and property. *Groat* therefore is consistent with the rule that requires a plaintiff to allege an extraordinary burden beyond the ordinary burden of defending a civil suit. Because an allegation of such interference is required under New York law, we affirm the district court's dismissal of O'Brien's claim on that ground.

### 2. *Termination in Favor of Plaintiff: Legal Background*

■ We now analyze whether plaintiff is precluded from recovering for malicious prosecution because he cannot establish the second element of that tort—that the prior litigation was terminated in his favor. This was an alternative basis on which the district court grounded its decision to dismiss plaintiff's malicious prosecution cause of action. We agree with the district court's conclusion without adopting its view that a voluntary dismissal in prior litigation under Fed. R.Civ.P. 41(a)(1)(i) necessarily bars a subsequent cause of action for malicious prosecution in every civil case. While there is authority that a malicious prosecution claim in New York always requires a formal resolution *on the merits* in the prior proceedings, we need not apply such a restrictive rule to resolve this case. Even assuming that New York would permit, under certain circumstances, a malicious prosecution cause of action to lie following a voluntary dismissal, such facts are not present in the case at hand.

One district court understated the confusion in the case law when it noted that the favorable termination cases "have reached varying results that are difficult to reconcile." *Lopez v. City of New York,* 901 F.Supp. 684, 688 (S.D.N.Y.1995). Still, our duty is to ascertain what is the law of New York. *West,* 311 U.S. at 237, 61 S.Ct. at 183–84. Based upon the relevant data, we believe that in the present case a New York court would dismiss O'Brien's malicious prosecu-

tion claim because he has failed to establish that the *Sequa* action terminated in his favor.

We begin with the oft-cited formulation of the favorable termination requirement found in *Halberstadt v. New York Life Insurance Co.,* 194 N.Y. 1, 10–11, 86 N.E. 801 (1909):

> The first [rule] is that where a criminal proceeding has been terminated in favor of the accused by judicial action of the proper court or official in any way involving the merits or propriety of the proceeding or by a dismissal or discontinuance based on some act chargeable to the complainant as his consent or his withdrawal or abandonment of his prosecution, a foundation in this respect has been laid for an action of malicious prosecution. The other and reverse rule is that where the proceeding has been terminated without regard to its merits or propriety by agreement or settlement of the parties or solely by the procurement of the accused as a matter of favor or as the result of some act, trick or device preventing action and consideration by the court, there is no such [favorable] termination....

*Halberstadt,* which has been described as a leading case on the subject, *see Loeb v. Teitelbaum,* 77 A.D.2d 92, 98–99, 432 N.Y.S.2d 487 (2d Dep't 1980), appears to require either (1) an adjudication of the merits by the tribunal in the prior action, or (2) an act of withdrawal or abandonment on the part of the party prosecuting the prior action.

Cases decided since *Halberstadt* seem to cast doubt on the viability of the second of these two methods—that is, the abandonment prong—of proving favorable termination. Most recently, the New York Court of Appeals held that a prior proceeding did not end in plaintiff's favor when the court had dismissed an information because the facts alleged could not support the charge. *MacFawn v. Kresler,* 88 N.Y.2d 859, 644 N.Y.S.2d 486, 666 N.E.2d 1359 (1996). Although the Court of Appeals cited *Halberstadt,* it recast the favorable termination rule and said that a proceeding ends favorably for plaintiff when it "involves the merits and indicates the accused's innocence." *Id.* at 860, 644 N.Y.S.2d 486, 666 N.E.2d 1359.

*MacFawn*'s statement of the rule might be read to require a prior resolution on the merits as a necessary foundation to state a viable malicious prosecution cause of action. One indication lending support to that view is that the Court of Appeals ignored *Halberstadt*'s "abandonment" prong while acknowledging that the prosecution was "at liberty to amend the information ... but did not do so" and chose not to refile the charge. *Id.* One might have expected the court to equate such lack of action with an abandonment on the part of the State.

Similarly, in *Hollender v. Trump Village Cooperative, Inc.*, 58 N.Y.S.2d 420, 461 N.Y.S.2d 765, 448 N.E.2d 432 (1983), the court stated the favorable termination rule as follows: "[I]n a malicious prosecution action, it is for the one who brings the suit to establish that the criminal proceeding ... terminated in favor of the accused. Indeed, it is 'only when [the] ... final disposition is such as to indicate ... innocence' that this burden is met." *Id.* at 425–26, 461 N.Y.S.2d 765, 448 N.E.2d 432. There, the court held that dismissal of criminal charges under a procedure called "adjournment in contemplation of dismissal" by its nature bars a malicious prosecution claim because it leaves the merits of the matter unresolved. *Id.* at 426, 461 N.Y.S.2d 765, 448 N.E.2d 432. Again, the issue was treated as a question of law that turned exclusively upon the procedure used to dismiss the action, not upon the more particular circumstances of the case.

Decisions of each of New York's intermediate appellate courts also hint at the atrophy of the abandonment prong. *See, e.g., Delello v. New York,* 221 A.D.2d 1010, 633 N.Y.S.2d 896, 897 (4th Dep't 1995) (barring claim because favorable termination requirement satisfied only when disposition indicates innocence), *appeal denied,* 87 N.Y.2d 810, 642 N.Y.S.2d 859, 665 N.E.2d 661 (1996); *Ward v. Silverberg,* 206 A.D.2d 522, 523, 614 N.Y.S.2d 757 (2d Dep't 1994) (dismissal granted at defense counsel's request "as a matter of favor" insufficient to establish termination favorable to plaintiff), *aff'd,* 85 N.Y.2d 993, 629 N.Y.S.2d 168, 652 N.E.2d 914 (1995) (mem.); *Buccieri v. Franzreb,* 201 A.D.2d 356, 358, 607 N.Y.S.2d 330 (1st Dep't 1994) (malicious prosecution claim defective because it did not plead former action "was dismissed on the merits"); *Kramer v. Herrera,* 176 A.D.2d 1241, 1241, 576 N.Y.S.2d 736 (4th Dep't 1991) (dismissal "in the interest of justice" not a termination in favor of accused and insufficient to sustain malicious prosecution claim); *Manno v. New York,* 176 A.D.2d 1222, 1223, 576 N.Y.S.2d 717 (4th Dep't 1991) (applying same rule); *MacLeay v. Arden Hill Hosp.,* 164 A.D.2d 228, 230–31, 563 N.Y.S.2d 333 (3d Dep't 1990) (same), *appeal denied,* 77 N.Y.2d 806, 568 N.Y.S.2d 913, 571 N.E.2d 83 (1991); *Jackson v. County of Nassau,* 123 A.D.2d 834, 834, 507 N.Y.S.2d 449 (2d Dep't 1986) (same), *appeal denied,* 69 N.Y.2d 608, 516 N.Y.S.2d 1023, 509 N.E.2d 358 (1987); *Miller v. Star,* 123 A.D.2d 750, 751–52, 507 N.Y.S.2d 223 (2d Dep't 1986) (dismissal "in interest of justice" bars malicious prosecution claim because neither acquittal nor any determination of the merits); *cf. Hankins v. Great Atl. & Pac. Tea Co.,* 208 A.D.2d 111, 116, 622 N.Y.S.2d 678 (1st Dep't 1995) (malicious prosecution cause of action reinstated when prior proceeding dismissed "in the interest of justice" because of an "uncontroverted alibi").

### 3. *Termination in the Instant Case*

With this decisional law in hand, we turn to the instant case. To begin with, plaintiff's claim clearly does not satisfy the first of the two showings discussed in *Halberstadt*—the dismissal of Sequa and Sequa Capital's causes of action in the prior litigation did not involve an adjudication of the merits of that controversy. But when defendants filed a notice of dismissal under Fed.R.Civ.P. 41(a)(1)(i), Judge Haight ordered the case dismissed as to O'Brien. According to Rule 41(a)(1), the first such dismissal is without prejudice "[u]nless otherwise stated in the notice of dismissal." Moreover, the notice expressly indicated that the action was "dismissed without prejudice." Thus, the dismissal obviously did not adjudicate the merits.

Relying heavily on *Hankins* plaintiff maintains that the *Sequa* action was abandoned at the instance of the claimants in circumstances that fairly imply innocence. We

harbor considerable doubt whether a dismissal under Rule 41(a)(1)(i) could *ever* support the favorable termination element of a malicious prosecution claim under the law of New York. *See Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995) (favorable termination requirement not satisfied in this case even if disposition without prejudice might indicate innocence under "unusual circumstances"); *Pinaud v. County of Suffolk,* 52 F.3d 1139, 1154 (2d Cir.1995) (an "interest of justice" dismissal not favorable to plaintiff in this case even if considered such "in certain instances"). But, assuming *arguendo* that a Rule 41(a)(1)(i) dismissal could constitute favorable termination under certain conditions—for instance, in those discussed in *Hankins*—O'Brien still cannot show the *Sequa* action ended favorably.

O'Brien alleges no circumstances suggesting that Sequa and Sequa Capital withdrew their action against him because it was meritless. Instead, the uncontroverted facts indicate that the action was dismissed shortly after Judge Haight required Sequa and Sequa Capital to advance litigation expenses to O'Brien predicated on the existence of "genuine issues of fact." *See* N.Y. Bus. Corp. Law § 724(c). Moreover, as Judge Chin stated, plaintiff's conclusory allegation that the *Sequa* court "interceded" and "found no evidence" of wrongdoing simply misstated Judge Haight's ruling on the § 724(c) question and therefore provides no support for the malicious prosecution action. *O'Brien,* 898 F.Supp. at 166–67.

The possibility that a litigant could maliciously institute suit against another and then avoid liability simply by filing a notice of dismissal under Rule 41(a)(1)(i) is concededly unsettling. The present record nonetheless contains no suggestion that the Sequa plaintiffs yielded to an adverse determination respecting the merits of their action. *Cf. Louis J. Sigl, Inc. v. Bresnahan,* 216 A.D. 634, 637–38, 215 N.Y.S. 735 (4th Dep't 1926) (discontinuance of prior action showed acquiescence in court's adverse decision regarding temporary injunction). Hence, even if the New York Court of Appeals' decisions of *MacFawn* and *Hollender* do not themselves sound the death knell of the rule that plain-

tiff's abandonment in the underlying proceedings constitutes favorable termination, the circumstances of this dismissal do not indicate resolution in O'Brien's favor and O'Brien's cause of action was properly dismissed.

### B. *Remaining Theories of Recovery*

The district court, in a well-reasoned opinion, dismissed O'Brien's remaining nine tort claims under Fed.R.Civ.P. 12(b)(6). *O'Brien,* 898 F.Supp. at 167–74. We agree with its analysis of those claims. Since we find no merit with respect to them in plaintiff's contentions on appeal, the dismissal of those claims is affirmed substantially for the reasons stated by Judge Chin.

## II  Sanctions

■   Our discussion turns now to the district court's award of Rule 11 sanctions against plaintiff's counsel. Included in that review are the trial court's factual findings and its formulation of what it considers an appropriate sanction. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 399, 405, 110 S.Ct. 2447, 2457–58, 2460–61, 110 L.Ed.2d 359 (1990). The test is whether the district court abused its discretion. *Id.* With this standard in mind, we analyze the imposition of sanctions for counsel's statements made during oral argument. As noted, the first basis for sanctions was his representation that the *Sequa* action had been discontinued when it became clear that nothing had been proved and that "nothing had been properly pleaded from the outset." The second ground for sanctions was the statement that an employee of the firm of Schulte Roth & Zabel had telephoned O'Brien's "employer" several times about his testimony in the *Sequa* litigation.

### A. *Fed.R.Civ.P. 11 and the 1993 Amendment*

Every paper submitted to the district court on behalf of a represented party must be signed by an attorney of record. Fed.R.Civ.P. 11(a). As amended in 1993, Rule 11(b) provides that "[b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written mo-

tion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ... (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." The rule further provides, in subsection (c), that the court may "impose an appropriate sanction" if it finds a violation of subsection (b).

■ Thus, the 1993 version of the rule allows the imposition of sanctions upon a finding that a factual allegation had no evidentiary support, unless there was a specific disclaimer that additional investigation is necessary. The revision, among other things, eliminated the provision that a pleading was, to the best of the signer's knowledge, "well grounded in fact." *See Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir.1995). These changes, while broadening the scope of the obligation to refrain from advancing baseless factual or legal contentions, put greater constraints on the imposition of sanctions. Fed.R.Civ.P. 11 Advisory Committee's Note (1993 Amendments). For example, the standard certification for factual allegations under Rule 11(b)(3) is "that there is (or likely will be) 'evidentiary support' for the allegation, not that the party will prevail with respect to its contention." *Id.* As a result, sanctions may not be imposed unless a particular allegation is utterly lacking in support.

At the same time the 1993 amendment expanded the scope of litigating lawyers' obligations in a manner directly relevant to the present case. It permits sanctions based upon the "presenting" of a paper—rather than limiting sanctions to those papers that bear an attorney's signature—and defining "presenting" broadly as "signing, filing, submitting, *or later advocating.*" Fed.R.Civ.P. 11(b) (emphasis supplied). The Advisory Committee explained the new provision as follows:

> The rule applies only to assertions contained in papers filed with or submitted to the court. It does not cover matters aris-

ing for the first time during oral presentations to the court, when counsel may make statements that would not have been made if there had been more time for study and reflection. However, a litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit. For example, an attorney who during a pretrial conference insists on a claim or defense should be viewed as "presenting to the court" that contention and would be subject to the obligations of subdivision (b) measured as of that time.

The new language and the Advisory Committee's comments make evident that although sanctions may now be based on litigants' oral representations, not all oral statements are sanctionable under Rule 11, even when they advance baseless allegations or objectively frivolous arguments. Moreover, to avoid imposing sanctions for oral statements regarding matters that do not flow directly from the signed paper—even when such new matters arise in the course of a presentation relating generally to the paper—the amended Rule 11 requires a close nexus between the oral statement and the underlying written paper. As the Advisory Committee stated, the rule applies only to "assertions" contained in the underlying paper, not to that paper generally or in the abstract.

■ Consequently, we are unable to accept the district court's view that Rule 11 applies to oral advocacy whenever an attorney advocates a signed paper. *O'Brien*, 898 F.Supp. at 176. Such a broad rule is completely contrary to the Advisory Committee's recognition that oral advocacy often requires lawyers to address new matters without much opportunity for study and reflection. In fact, because oral advocacy almost always relates in some way to a prior signed paper, adopting the district court's proposition would entail a significant and unintended expansion of Rule 11's scope.

That an oral statement is made in the course of advocating a pleading or motion is not enough; to be sanctionable the oral statement must relate directly to a particular representation contained in the document that the lawyer is then advocating. Thus, to be sanctionable an oral representation must meet two requirements: (1) it must violate the certification requirement of Rule 11(b), e.g., by advocating baseless allegations, and (2) it must relate directly to a matter addressed in the underlying paper and be in furtherance of that matter to constitute advocating within the meaning of subsection (b). With these general principles in mind, we turn to the two bases for sanctions identified by the district court.

### B. *Representation Concerning Merits of Prior Litigation*

■ The first was O'Brien's representation to the district court, referring to the earlier *Sequa* litigation, that it was "absolutely clear that nothing . . . had been proved" and that "nothing had been properly pleaded from the outset." This representation is totally lacking in evidentiary support and is flatly contradicted by Judge Haight's decision of July 19, 1993, denying O'Brien's motion to dismiss that action on the pleadings. Counsel's statement is also inconsistent with Edward Piszko's signed affidavit implicating O'Brien in the alleged fraudulent activity, which fact is conceded in O'Brien's complaint. O'Brien has insisted that the Piszko affidavit was executed under duress, but that argument does not support the notion that the cause of action Sequa asserted against O'Brien was entirely baseless.

■ Plaintiff's counsel has pointed to no facts supporting the oral statement he made to the district court. Instead, he maintains—as he did in an affidavit in opposition to the sanctions motion—that the statement actually meant that the *Sequa* complaint was deficient because its *factual* allegations lacked support. But this personal interpretation is at odds with the plain words spoken to the court: O'Brien's counsel clearly said that "nothing had been properly pleaded." Rule 11 imposes an objective standard of conduct. *See McMahon v. Shearson/Ameri-*

*can Express, Inc.*, 896 F.2d 17, 22 (2d Cir. 1990); 2A Moore's Federal Practice ¶ 11.02[3], at 11–43 & n. 4 (1996). The district court correctly based the sanctions upon the objective meaning of the words used rather than the attorney's creative *post hoc* explanation.

In addition, the statement about the sufficiency of the *Sequa* pleadings relates to specific allegations contained in the second amended complaint—a paper signed by O'Brien's attorney. As the district court held, *O'Brien*, 898 F.Supp. at 175, the representation flows directly from the assertions in the complaint that Judge Haight "interceded" in *Sequa* and that the court "confront[ed]" defendants with the deficiency of their case." Hence, when O'Brien's counsel made the oral statement he was presenting a signed paper by "later advocating" it within the meaning of Rule 11(b). In short, the requirements set forth earlier in this discussion were clearly satisfied, and the district court did not abuse its discretion in imposing sanctions for violations of Rule 11(b).

### C. *Representation Regarding Communications with Employer*

■ But, with respect to the second basis for sanctions—counsel's statement that several telephone calls were made to O'Brien's employer regarding his testimony in the *Sequa* case—the necessary requirements were not met.

Rule 11(b)(3) mandates that the factual contention have evidentiary support. The district court reasoned that plaintiff's own affidavit makes it clear that the alleged telephone calls were placed to the office of plaintiff's attorney, not his employer. *O'Brien*, 898 F.Supp. at 175. This factual finding is clearly erroneous. O'Brien's affidavit, upon which his counsel relied in responding to the sanctions motion, states that O'Brien was acting as a consultant for an entity affiliated with the law firm Grimes & Battersby (Grimes) at the time he allegedly received the calls. According to the affidavit, Grimes was not O'Brien's counsel then or later. Instead, the entity affiliated with Grimes— which apparently did business at the same

offices—had granted O'Brien the use of an office and paid him several thousand dollars in income as well.

Thus, the only evidence cited by the district court—the O'Brien affidavit—shows the sanctioned statement actually had an evidentiary basis. If the relationship between Grimes and O'Brien was as plaintiff describes it, the objectionable telephone calls might reasonably be said to have been made to plaintiff's "employer." The statement was not—as the district court termed it—an "overstatement," "gross" or otherwise. Reaching a contrary conclusion on the basis of the O'Brien affidavit was therefore an abuse of the district court's discretion. *See Navarro–Ayala v. Hernandez–Colon,* 3 F.3d 464, 467 (1st Cir.1993) (Breyer, C.J.) ("Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement.").

■ We go on to assess, as an alternative reason for finding an abuse of discretion, the decision to sanction counsel in light of the independent requirement that the oral statement have a connection to a paper signed by the attorney. Here no such connection was shown. The district court, without citing any particular part of plaintiff's complaint, observed that the comments purported to show that "defendants were seeking to sabotage plaintiff's relationships with his employer and his ability to earn a living." *O'Brien,* 898 F.Supp. at 175. In our view, this does not constitute a sufficient connection to the complaint to bring the statement within the ambit of Rule 11. Although the complaint alleges generally that the Schulte Roth & Zabel defendants participated in a campaign that destroyed O'Brien's career and reputation, there is no allegation in the complaint that telephone calls were made to plaintiff's employer, or even to his attorney or any other party, relating to subpoenas in the *Sequa* case.

In an attempt to establish a connection between the oral statement and a signed paper, defendants cite three portions of the O'Brien complaint. They point to the following allegations: (1) defendants "enthralled [O'Brien] maliciously in groundless, burdensome civil litigation in a continuing campaign of defamation and tortious interference with contracts," (2) "O'Brien has been embarrassed ... in the financial community as a whole," and (3) the *Sequa* subpoenas "were misused maliciously, solely to abuse and harass O'Brien." These assertions are all general in nature. None of them are related to the subject of the telephone calls. Counsel's statement about telephone calls was new matter arising during an oral presentation without any connection to the complaint.

The only allegation in the complaint remotely connected to communications between third parties and O'Brien's employer is one not mentioned in defendants' brief. In pleading his defamation claim, plaintiff alleged the following: "After O'Brien started employment, one of the John Doe defendants sent a copy of the lawsuit to O'Brien's employer in a plain envelope without any identification of the sender. Immediately, O'Brien became the subject of gossip. This gossip undermined O'Brien's authority with the company...." This allegation, however, refers to a single item mailed to plaintiff's office by an unidentified sender. Counsel's oral assertion that a lawyer at Schulte Roth & Zabel improperly telephoned the office repeatedly is an entirely different matter.

Defendants reiterate the district court's observation that O'Brien's counsel was given a chance to reflect on the accuracy of the statements, and that he nevertheless reaffirmed them. *See 'O'Brien,* 898 F.Supp. at 176. However, counsel's failure to withdraw or correct his statements under the "safe harbor" provision of Rule 11(c)(1)(A) is irrelevant for this analysis because the sanctions were based upon the statements made during oral argument, rather than his subsequent reaffirmation of the statements. The district court did not impose sanctions for any subsequent conduct.

For the two stated alternative reasons, we hold that the imposition of sanctions on the basis of the statement regarding telephone calls made to plaintiff's "employer" was an abuse of the district court's discretion.

## CONCLUSION

Accordingly, the dismissal of plaintiff's complaint is affirmed. Of the two stated

bases for imposing Rule 11 sanctions against plaintiff's counsel, we affirm the first and reverse the second. The judgment is vacated to the extent that it imposed sanctions, and the case remanded for the district court to reconsider whether and, in what amount, sanctions should nevertheless be imposed.